No. 86,221

In the Matter of HENRY O. BOATEN, *Respondent.*

(22 P.3d 1034)

Opinion filed April 20, 2001.

*Alexander M. Walczak,* deputy disciplinary administrator, argued the cause and was on the formal complaint for petitioner.

*Robert E. Keeshan* argued the cause for respondent, and *Henry O. Boaten,* respondent, argued the cause pro se.

*Per Curiam:* This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Henry O. Boaten. The respondent takes no exception to the hearing panel report. The formal complaint alleged violations of Kansas Rules of Professional Conduct (KRPC) 1.1 (lack of competence) (2000 Kan. Ct. R. Annot. 300); 1.3 (lack of diligence) (2000 Kan. Ct. R. Annot. 310); and 1.4(a) (failing to keep client reasonably informed) (2000 Kan. Ct. R. Annot. 320). A majority of the court adopts and imposes the panel recommendation of published censure and an additional 12 hours of continuing legal education. A minority would impose indefinite suspension, the sanction recommended by the Disciplinary Administrator.

Boaten is an attorney admitted to the practice of law in Kansas in 1981. Respondent filed with this court a response to a show cause order in which he advises the court that he takes no exceptions to the "Disciplinary Administrator's report" (final hearing report).

The hearing panel in its final hearing report made the following findings of fact and conclusions of law:

"1.   Henry O. Boaten (hereinafter 'the Respondent') is an attorney at law, [practicing in ] Kansas . . . . His last registration address with the Clerk of the Appellate Courts of Kansas is . . . Topeka, Kansas . . . .

"2.   In 1994, the Respondent represented LaKisha L. (Bracken) Sanchez, the Complainant, (hereinafter 'Ms. Bracken') in a divorce proceeding against Anthony Bracken (hereinafter 'Mr. Bracken'). At the time of the divorce, both Ms. Bracken and Mr. Bracken were residents of Junction City, Kansas, and members of the

United States Army, active duty. In July, 1996, Ms. Bracken left the active duty of the United States Army.

"3.   One child was born of the marriage. At the time the divorce was granted, in September, 1994, the parents were awarded joint legal custody of the child and Ms. Bracken had residential custody of the child. Additionally, Mr. Bracken exercised his visitation rights and paid Ms. Bracken child support.

"4.   Pursuant to the Respondent's standard office procedure, at the time Ms. Bracken retained the Respondent, Ms. Bracken filled out an information form. On that form, Ms. Bracken listed her mother as a contact person. At all times relevant to the facts of this case, Ms. Bracken's mother remained at the same address.

"5.   After the divorce was granted, the Respondent failed to withdraw as Ms. Bracken's attorney. As such, the Respondent remained as Ms. Bracken's counsel of record. However, the Respondent claimed in his Answer to the Formal Complaint, filed in this matter, that the 'Respondent affirmatively advised the court that he was not representing complainant.' Then, at the hearing on this matter, the Respondent testified that that statement was untrue.

"6.   From the time of the divorce until December, 1996, the child remained with Ms. Bracken. Then, in December, 1996, at Ms. Bracken's request, the child began residing with Mr. Bracken. At that time, Ms. Bracken was attempting to establish a home in North Carolina and asked Mr. Bracken to care for the child until Ms. Bracken could 'get on her feet.' At the time that the child began residing with Mr. Bracken, Mr. Bracken refrained from paying Ms. Bracken child support.

"7.   During the time that the child resided with Mr. Bracken (from December, 1996, through October 23, 1997), he did not seek to change the residential custody.

"8.   On October 23, 1997, Ms. Bracken returned to Junction City, Kansas. At that time, Ms. Bracken and Mr. Bracken were residing within three blocks of each other. The child spent time with each parent. However, residential custody remained with Ms. Bracken.

"9.   On November 5, 1997, Mr. Bracken executed a variety of pleadings in Charles Harper's office. The pleadings were designed to change residential custody from Ms. Bracken to Mr. Bracken. Immediately thereafter, Mr. Harper sent the Respondent a copy of a motion to change custody. Notice of a hearing to be held November 17, 1997, at 9:00 a.m., was provided to the Respondent by Mr. Harper. The cover letter sent by Mr. Harper asked the Respondent if he still represented Ms. Bracken and further asked if Mr. Harper could contact Ms. Bracken directly if the Respondent no longer did.

"10.   On November 12, 1997, the Respondent sent Mr. Harper a letter indicating that he did not have a current address for Ms. Bracken. Additionally, the Respondent authorized Mr. Harper to contact Ms. Bracken directly.

"11.   Even though Respondent authorized Mr. Harper to contact Ms. Bracken directly, Mr. Harper never provided copies of any pleadings or correspondence to Ms. Bracken.

"12.   Neither Mr. Bracken, Mr. Harper, nor the Respondent provided Ms. Bracken with notice of the November 17, 1997, hearing.

"13.   Even though the Respondent received notice of the November 17, 1997, hearing, the Respondent failed to appear at that hearing. At the November 17, 1997, hearing, Mr. Bracken obtained temporary custody of the child.

"14.   The only information that Ms. Bracken had regarding the pending proceedings came from Mr. Bracken. Prior to November 18, 1997, Mr. Bracken gave Ms. Bracken a copy of Disciplinary Administrator's Exhibit C, 'Custody Agreement and Order.' Mr. Bracken asked Ms. Bracken to sign the agreement and she refused. After that contact, Mr. Bracken did not again mention the pending change of custody proceedings.

"15.   On November 18, 1997, Ms. Bracken took the 'Custody Agreement and Order' to the Respondent's office. The Respondent was not in the office at that time. Ms. Bracken showed the pleading to the Respondent's secretary. According to Ms. Bracken, the Respondent's secretary advised Ms. Bracken that, as long as she did not sign it, the document had no meaning. Because she was advised that the document had no significance without her signature, Ms. Bracken threw the document away.

"16.   On December 10, 1997, Mr. Harper sent the Respondent a notice that a hearing was to be held on December 22, 1997, on Mr. Bracken's Motion Confirming Change of Residential Custody. Additionally, on that same date Mr. Harper sent the Respondent a letter that contained a current address for Ms. Bracken and an Order from the November 17, 1997, hearing.

"17.   On December 22, 1997, the Bracken case was called. The Respondent was in the courtroom and appeared on behalf of Ms. Bracken. The Respondent's appearance was not made with the knowledge or consent of Ms. Bracken. The hearing consisted of the following:

'THE COURT:   Okay. Moving on down. 94D814, Bracken; Lakeshia [sic] versus Anthony.

'MR. HARPER:   Your Honor, this is respondent's motion to confirm the change of custody that's existed for the last year. The Court previously entered temporary orders granting my client temporary custody of his daughter. She is four years of age, continues to reside with her father. Notice was given to, uh, Mr. Henry Boaten. I note Mr. Boaten is in the courtroom. I do not believe petitioner is present in the courtroom.

'THE COURT:   Mr. Boaten, is Lakeshia [sic] Bracken here?

'MR. BOATEN:   No, Your Honor.

'THE COURT: Note the petitioner does not appear, but appears by and through Mr. Henry Boaten.

'MR. BOATEN: Your Honor, we have not been able to be in contact with Lakeshia [sic] on this matter. Uh, it's my understanding that the petitioner in this case—or the respondent in this case, has had the child for almost a year now. So it's a matter of formalizing this matter. So I would basically say that the notices were sent where it ought to be sent as far as the, uh, petitioner's concerned. And, uh, we cannot say much about the motion, other than, uh, that I don't have any dispute regarding how long the, uh, respondent had the child in his possession. And if this is to formalize it, then that is the way that the Court ought to go. Thank you.

'THE COURT: We're all agreeing the motion, uh—give me a dom rel and a child support worksheet, 'cause I'm going to order support, too.

'MR. HARPER: I will. I didn't have any information from Lakeshia [sic] regarding her income, but I will prepare that and give it to the Court.

'THE COURT: Okay. Thank you.'

"18. On December 29, 1997, Mr. Harper sent the Respondent a proposed order memorializing the events of the December 22, 1997, hearing. Without discussing the contents of the order, including the provision for child support, with Ms. Bracken, the Respondent signed the order in [sic] behalf of Ms. Bracken.

"19. Although the standard procedure in the Respondent's law office is to send the client a copy of all pleadings received, the Respondent has no cover letters indicating that any pleadings were transmitted to Ms. Bracken. Additionally, Ms. Bracken did not receive any correspondence or copies of pleadings from the Respondent regarding the change of custody proceedings. Moreover, the Respondent did not attempt to locate Ms. Bracken, through Ms. Bracken's contact person, Ms. Bracken's mother.

"20. In April, 1998, Ms. Bracken received correspondence indicating that she was behind in child support. However, Ms. Bracken had not previously been made aware that residential custody had been changed and that child support had been ordered. Ms. Bracken took the letter to the Respondent's office. Because the Respondent was not present in the office at that time, Ms. Bracken discussed the matter with the Respondent's secretary. At that time, the Respondent's secretary told Ms. Bracken that they had been receiving quite a bit of paper work from Mr. Bracken's attorney. Ms. Bracken provided the Respondent's secretary with a telephone number where Ms. Bracken could be reached. The only message that Ms. Bracken received was that the Respondent would 'withdraw his signature' or take the case back to court for $500.00.

"21. Even though Mr. Bracken had residential custody of the child, the child remained with Ms. Bracken until April, 1998. When Ms. Bracken learned that a child support order had been issued against her, she confronted Mr. Bracken. Ms. Bracken learned for the first time that Mr. Bracken had obtained residential cus-

tody. Mr. Bracken told Ms. Bracken that her attorney was present in court at the change of custody hearing. Ms. Bracken told Mr. Bracken that she did not have an attorney. And, Mr. Bracken repeated that her attorney appeared for her. At that time, Mr. Bracken began enforcing the residential custody order. From April, 1998, through August, 1998, the child spent approximately equal time with Mr. Bracken and Ms. Bracken.

"22.    From August, 1998, until July, 1999, the child resided with Ms. Bracken. Then, in July, 1999, Mr. Bracken was transferred to Germany. At that time, the child left the country and has resided with Mr. Bracken in Germany. Ms. Bracken did have visitation with the child during the summer months of 2000.

### "CONCLUSIONS OF LAW

"Based upon the above findings of fact, the Hearing Panel makes the following conclusions of law:

"1.    The Deputy Disciplinary Administrator moved to amend the Formal Complaint to include allegations that the Respondent violated KRPC 3.3, KRPC 8.4(c), KRPC 8.4(d), and KRPC 8.4(g). The law, regarding amendments to the Formal Complaint was thoroughly examined in *State v. Caenen*, 235 Kan. 451, 681 P.2d 639 (1984), as follows:

'Supreme Court Rule 211(b) (232 Kan. clxvi), requires the formal complaint in a disciplinary proceeding to be sufficiently clear and specific to inform the respondent of the alleged misconduct.

'The seminal decision regarding the applicability of the due process clause to lawyer disciplinary proceedings is found in *In re Ruffalo*, 390 U.S. 544, 88 S. Ct. 1222, 20 L Ed. 2d 117, *reh. denied* 391 U.S. 961, 88 S. Ct. 1833, 20 L. Ed. 2d 874 (1968). There the United States Supreme Court held that a lawyer charged with misconduct in lawyer disciplinary proceedings is entitled to procedural due process, and that due process includes fair notice of the charges sufficient to inform and provide a meaningful opportunity for explanation and defense.

'Decisions subsequent to *Ruffalo* have refined the concept of due process as it applies to lawyer disciplinary hearings, and suggest that the notice to be provided be more in the nature of that provided in civil cases. The weight of authority appears to be that, unlike due process provided in criminal actions, there are no stringent or technical requirements in setting forth allegations or descriptions of alleged offenses. . . . Due process requires only that the charges must be sufficiently clear and specific to inform the attorney of the misconduct charged, but the state is not required to plead specific rules, since it is the factual allegations against which the attorney must defend. . . . However, if specific rules are pled, the state is thereafter limited to such specific offenses. . . .

'Subsequent to the *Ruffalo* decision, the due process requirements in lawyer disciplinary proceedings have been given exhaustive treatment by this court. In *State v. Turner*, 217 Kan. 574, 538 P.2d 966 (1975), 87 A.L.R.3d 337, the court summarized prior Kansas and federal precedent on the question, including *Ruf-*

*falo*, and held in accordance with established precedent that the state need not set forth in its complaint the specific disciplinary rules allegedly violated . . ., nor is it required to plead specific allegations of misconduct. . . . What is required was simply stated therein:

' " 'We must conclude that where the facts in connection with the charge are clearly set out in the complaint a respondent is put on notice as to what ethical violations may arise therefrom. . . .

. . . .

' " 'It is not incumbent on the board to notify the respondent of charges of specific acts of misconduct as long as proper notice is given of the basic factual situation out of which the charges might result.' " ' 235 Kan. at 458-58 (citations omitted).

"Thus, only when the Formal Complaint alleges facts that would support findings of violations of the requested amendments will a motion to amend the Formal Complaint be granted. In this case, the Formal Complaint does not [contain] sufficient facts to support findings that the Respondent violated KRPC 3.3, KRPC 8.4(c), KRPC 8.4(d), and KRPC 8.4(g). Accordingly, the Deputy Disciplinary Administrator's motion to amend the Formal Complaint is denied.

"2.    Lawyers must provide competent representation to their clients. KRPC 1.1. 'Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.' *Id*. The Respondent failed to provide competent representation when he agreed to the change of custody and order of child support without discussing the matter with Ms. Bracken. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.1.

"3.    Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. The Respondent failed to act with reasonable diligence and promptness in representing Ms. Bracken, when he failed to appear at the November 17, 1998, hearing, when he failed to contact Mr. Bracken regarding the change of custody hearing, and when he failed to forward copies of the pleadings to Ms. Bracken or her contact person. As such, the Hearing Panel concludes that the Respondent violated KRPC 1.3.

"4.    KRPC 1.4(a) requires attorneys to keep clients 'reasonably informed about the status of a matter.' *Id*. The Respondent failed to notify Ms. Bracken of the pending change of custody proceeding. Additionally, the Respondent failed to forward correspondence and pleadings to Ms. Bracken or her contact person. That failure resulted in the uncontested change of custody of Ms. Bracken's daughter. Therefore, the Hearing Panel concludes that the Respondent violated KRPC 1.4(a).

## "RECOMMENDATION

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing

Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty violated.* The Respondent violated his duty to his client to provide competent and diligent representation. Additionally, the Respondent violated his duty to maintain reasonable communication with this client.

"*Mental State.* The Respondent negligently violated the above-stated duties.

"*Injury.* The Respondent's misconduct resulted in actual injury to Ms. Bracken. Because the Respondent failed to act competently and diligently and because the Respondent failed to maintain reasonable contact with Ms. Bracken, she was not made aware of the pending change of custody hearing and she was not able to appropriately respond to the proceedings. Ultimately, Ms. Bracken lost residential custody of her daughter.

"*Aggravating or Mitigating Factors.* Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"*Prior Disciplinary Offenses.* The Respondent has been disciplined. On February 22, 1989, the Respondent was informally admonished for having violated DR 2-106(a).

"On May 20, 1992, the Respondent was informally admonished for having violated [KRPC] 1.1 and 5.5.

"On March 21, 1993, after a hearing on a Formal Complaint, a Hearing Panel recommended that the Respondent receive an informal admonition for having violated [KRPC] 1.1 and 1.3.

"*Refusal to Acknowledge Wrongful Nature of Conduct.* The Respondent maintains that he did not violate the Kansas Rules of Professional Conduct. As such, the Respondent has refused to acknowledge the wrongful nature of his conduct.

"*Substantial Experience in the Practice of Law.* The Respondent has practiced law since 1981. At the time of the misconduct, the Respondent had 16 years of experience in the practice of law.

"Mitigating circumstances are any consideration or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"*Absence of Dishonest or Selfish Motive.* The Respondent did not gain from the misconduct. There was no evidence of a dishonest or selfish motive.

"*Previous Good Character and Reputation.* The Respondent is an active and productive member of the bar in Topeka and Junction City. He enjoys the respect of his peers and clients, and generally possesses a good character and reputation as evidenced by several letters received by the Hearing Panel.

"*Remoteness of Prior Offenses.* The facts that gave rise to the three previous informal admonitions occurred in 1988, 1990, and 1991. Because the misconduct

in these cases occurred at least six years prior to the misconduct in this case, the Hearing Panel concludes that the prior offenses are remote in time.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered Standard 4.43. That standard provides, in pertinent part:

'Reprimand is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client.'

*Id.* Based upon the findings of fact, conclusions of law, the duties violated by the Respondent, the Respondent's mental state, the injury suffered by Ms. Bracken, the aggravating factors, the mitigating factors, and Standard 4.43, the Hearing Panel unanimously recommends that Respondent be publicly censured.

"The misconduct in this case could have been avoided without much effort. Had the Respondent filed a motion to withdraw from his representation of Ms. Bracken, he would not have committed misconduct in the instant case. Accordingly, the Hearing Panel urges the Respondent, in domestic cases, to prepare and file motions to withdraw after the original representation has been completed.

"Additionally, the Hearing Panel recommends that the Respondent be ordered to complete an additional twelve hours of continuing legal education in the current reporting year. It is the opinion of the Hearing Panel that four hours of ethics education, four hours of family law education, and four hours of office management education would aid the Respondent in understanding that he committed misconduct and in avoiding misconduct of this type in the future."

A finding of attorney misconduct requires proof "by clear and convincing evidence." Supreme Court Rule 211(f) (2000 Kan. Ct. R. Annot. 251). The panel's findings of fact are supported by clear and convincing evidence and those findings, along with the panel's conclusions of law, are adopted by this court.

IT IS THEREFORE ORDERED that the Respondent, Henry O. Boaten, be and he is hereby disciplined by published censure in accordance with Supreme Court Rule 203(a)(3) (2000 Kan. Ct. R. Annot. 224) for his violations of the KRPC.

IT IS FURTHER ORDERED that the Respondent shall complete an additional 12 hours of continuing legal education in excess of the required 12 hours. The additional 12 hours shall include 4 hours of legal ethics education, 4 hours of family law education, and 4 hours of law firm management education. At least 4 hours of the additional 12 shall be completed in the current reporting year and the remaining 8 hours are to be completed in the July 1, 2001-June 30, 2002, reporting year. The Respondent shall furnish

proof of his compliance with the continuing legal education requirement set out above to the Clerk of the Appellate Courts and to the Disciplinary Administrator.

IT IS FURTHER ORDERED that this opinion be published in the official Kansas Reports and that the costs of this action be assessed to the Respondent.