No. 90,705

In the Matter of HENRY O. BOATEN, *Respondent*.

(78 P.3d 458)

Opinion filed October 31, 2003.

*Alexander M. Walczak,* deputy disciplinary administrator, argued the cause and was on the formal complaint for petitioner.

*Deborah June Purce,* of Purce Law Office, of Topeka, argued the cause for respondent, and *Henry O. Boaten,* respondent, argued the cause pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the Disciplinary Administrator against Respondent Henry O. Boaten, Kansas Attorney Registration No. 10970, whose last registration address with the Clerk of the Appellate Courts of Kansas is Topeka, Kansas. The Respondent was admitted to the practice of law in the state of Kansas in April 1982.

The formal complaint filed against the Respondent alleged violations of KRPC 1.3 (diligence) (2002 Kan. Ct. R. Annot. 328) and KRPC 1.4 (communication) (2002 Kan. Ct. R. Annot. 340). A panel of the Kansas Board for Discipline of Attorneys conducted a formal hearing on February 20, 2003, and later prepared a report containing its findings of fact, conclusions of law, and recommendations for discipline. Respondent filed no exceptions to the hearing panel's report. We adopt the panel's findings and conclusions but modify its recommended discipline.

## SUMMARY OF UNCONTESTED FACTS

On May 23, 2000, Ulysses J. Carter retained the Respondent to represent his son, Anceo Carter, who was incarcerated at the Norton Correctional Facility in Norton, Kansas. Ulysses Carter sought to have his son's sentence reduced.

The Respondent failed to enter into a written fee agreement with Ulysses Carter or Anceo Carter. The oral fee agreement between Ulysses Carter and the Respondent required payment of an advance fee of $1,000. The Respondent was to earn the fee at a rate of $100 per hour. The Respondent told Ulysses Carter that he

believed $1,000 should be sufficient to complete the legal work. However, in the event $1,000 did not cover the entire fee, the Respondent would bill Ulysses Carter at a rate of $100 per hour. The Respondent memorialized a portion of the oral fee agreement by letter.

On June 28, 2000, the Respondent wrote a letter to the Secretary of Corrections regarding the son's sentence. In his letter, the Respondent requested that the Department of Corrections (DOC) convert the indeterminate sentence to a sentence pursuant to the Kansas Sentencing Guidelines.

On July 7, 2000, Robert E. Wasinger, legal counsel at the Norton Correctional Facility, wrote to the Respondent. Mr. Wasinger informed the Respondent that, after a preliminary review of the son's sentence, it appeared that the sentence had been appropriately computed.

In September 2000, Ulysses Carter passed away. Following that death, the Respondent did not contact Anceo Carter regarding the fee arrangement.

On December 4, 2000, the Respondent filed a petition for writ of habeas corpus and mandamus in the District Court of Geary County, Kansas, citing K.S.A. 60-801 and K.S.A. 60-1507. The Respondent attempted to sue the Kansas Secretary of Corrections. However, the Respondent incorrectly listed Ron Thornburgh (the Kansas Secretary of State) as the Kansas Secretary of Corrections. Mr. Thornburgh was served with process. The Respondent did not achieve proper service on Charles Simmons, the Kansas Secretary of Corrections.

On December 14, 2000, Linden G. Appel, deputy chief legal counsel for the DOC, wrote to the Respondent acknowledging that Anceo Carter's sentence was subject to conversion and proposed alternative methods of resolving the matter. The Respondent failed to take any immediate action in response to Mr. Appel's letter.

On January 23, 2001, the Respondent's secretary wrote to Mr. Carter, assuring him that the filing of the petition for writ of habeas corpus and mandamus had been successful and provided a copy of Mr. Appel's December 14, 2000, letter.

In February 2001, Mr. Appel wrote to the Respondent and notified him that the DOC had previously issued a sentencing guidelines report and would be unable to issue a second report. At that time, however, Mr. Appel asked the Respondent to contact him if he was interested in proceeding with a stipulated journal entry. The Respondent did not provide Mr. Carter with a copy of Mr. Appel's February 2001, letter. As a result, Mr. Carter was unaware that the department's position had changed.

On February 22, 2001, the Respondent wrote to Mr. Appel and accepted the offer to have the matter resolved by an agreed upon journal entry. Rather than prepare the journal entry, the Respondent asked Mr. Appel to prepare it. On April 16, 2001, the Respondent's secretary wrote to Mr. Appel, again requesting that Mr. Appel prepare a journal entry.

On April 18, 2001, Mr. Appel wrote the Respondent a third letter and completely reversed the department's position regarding Mr. Carter's sentence. Mr. Appel informed the Respondent that the only avenue by which to have Mr. Carter's position heard would be through the filing of a motion pursuant to K.S.A. 60-1507 and served upon the county attorney. The Respondent did not forward a copy of Mr. Appel's April 18, 2001, letter to Mr. Carter. As a result, Mr. Carter was not aware that the department's position had changed.

On May 2, 2001, the Respondent's secretary wrote to Mr. Carter informing him that an amended petition had been filed and served on the county attorney. The Respondent's secretary did not enclose a copy of Mr. Appel's April 18, 2001, letter or otherwise notify Mr. Carter of the letter's contents.

On May 17, 2001, the Respondent filed an amended petition in behalf of Mr. Carter, but failed to provide Mr. Carter with a copy of the amended petition.

On June 25, 2001, Mr. Carter wrote to the Respondent requesting that he be provided with a copy of the amended petition filed in his behalf. The Respondent failed to respond to Mr. Carter's request for information. Because the Respondent failed to respond to Mr. Carter's request for information, Mr. Carter wrote to the

clerk of the district court. The clerk provided him with a copy of the court's docket.

On July 25, 2001, the Respondent filed a second amended petition in behalf of Mr. Carter, but failed to provide Mr. Carter with a copy.

On July 30, 2001, Mr. Carter wrote to the Respondent again. He complained that the Respondent had failed to provide him with a copy of the amended petition or otherwise respond to requests for information.

On August 8, 2001, the Respondent wrote to Mr. Carter, enclosing a copy of the amended petition filed on July 25, 2001, and a copy of Mr. Appel's April 18, 2001, letter. The Respondent informed Mr. Carter that the matter was scheduled for a "status" hearing on August 14, 2001. Even though the Respondent knew that the DOC had changed its position in February 2001, it was not until this time that the Respondent informed Mr. Carter of the change.

On August 20, 2001, Mr. Carter wrote to the Respondent requesting information regarding the outcome of the August 14, 2001, hearing. The Respondent failed to respond to the letter and failed to provide Mr. Carter with the requested update.

On September 3, 2001, Mr. Carter wrote to the Respondent terminating his legal services and demanding a full refund of the fees paid by his father. Mr. Carter sent the letter via certified delivery, return receipt requested. After attempting to deliver the letter three times, the United States Postal Service returned the letter to Mr. Carter and marked it as "unclaimed." The Respondent was unaware that Mr. Carter had terminated his services.

On September 11, 2001, the Respondent filed a motion for summary judgment. The Respondent forwarded a copy of the motion to Mr. Carter with a bill for $650.

The motion for summary judgment was unsuccessful. On November 6, 2001, the Respondent wrote to Mr. Carter, enclosing an order dismissing the petition and informing him that the Respondent would be withdrawing from representing him. On November 9, 2001, the court allowed the Respondent to withdraw.

The Respondent did not refund any portion of the fee paid by Ulysses Carter for Anceo Carter.

## PANEL'S CONCLUSIONS OF LAW

Based upon the above uncontested facts, the panel concluded, as a matter of law, that the Respondent violated KRPC 1.3 and KRPC 1.4, as detailed below.

### KRPC 1.3

Attorneys must act with reasonable diligence and promptness in representing their clients. See KRPC 1.3 (diligence) (2002 Kan. Ct. R. Annot. 328). In this case, the Respondent failed to provide diligent representation to Mr. Carter when he failed to immediately contact Mr. Appel after Mr. Appel's December 14, 2000, letter and ensure a rapid execution of the journal entry converting Mr. Carter's sentence. Because the Respondent failed to act with reasonable diligence and promptness in representing Mr. Carter, the panel concludes that the Respondent violated KRPC 1.3. The panel, however, notes that Mr. Appel's later interpretation that Mr. Carter's sentence was not subject to conversion might have prevented conversion even if the Respondent had acted with appropriate haste.

### KRPC 1.4

KRPC 1.4(a) provides that, "[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information." (2002 Kan. Ct. R. Annot. 340). In this case, the Respondent violated KRPC 1.4(a) when he repeatedly failed to respond to requests for information from Mr. Carter and when he repeatedly failed to provide Mr. Carter with copies of relevant letters and pleadings. Accordingly, the panel concludes that the Respondent violated KRPC 1.4(a).

## PANEL'S RECOMMENDATION

In making its recommendation for discipline, the panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (1991). Pursuant to Standard 3, the factors to be considered are the duty violated, the

lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

On the subjects of Duty Violated and Mental State, Respondent negligently violated his duty to his client to provide diligent representation and adequate communication. On the subject of Injury, Respondent failed to act promptly in his dealings with Mr. Appel of DOC, causing potential injury to Mr. Carter. The frustration Mr. Carter experienced due to Respondent's failure to keep him adequately informed amounted to actual injury.

On the subject of Aggravating Factors, several were present. In regard to the factor of Prior Disciplinary Offenses, Respondent had four. In 1989, the Disciplinary Administrator informally admonished the Respondent for having violated DR 2-106(a), and in 1992 he was informally admonished for having violated MRPC 1.1 and MRPC 5.5. In 1993, a panel recommended the Respondent receive an informal admonition for having violated MRPC 1.1 (2002 Kan. Ct. R. Annot. 316) and MRPC 1.3, and in 2001, the Kansas Supreme Court ordered published censure for Respondent having violated KRPC 1.1, KRPC 1.3, and KRPC 1.4. The court ordered the Respondent to complete 12 hours of continuing legal education in addition to the annual requirement of 12 hours. *See In re Boaten*, 271 Kan. 282, 22 P.3d 1034 (2001).

Regarding the aggravating factor of Pattern of Misconduct and Multiple Offenses, the Respondent repeatedly failed to provide information upon request and engaged in multiple offenses. Regarding the aggravating factor of Refusal to Acknowledge Wrongful Nature of Conduct, the Respondent exercised his right to defend the allegations of misconduct and maintained throughout the hearing that he had not violated the Kansas Rules of Professional Conduct. Regarding the aggravating factor of Vulnerability of Victim, the Respondent's client was incarcerated throughout the period of representation, making him particularly vulnerable to misconduct relating to a lack of diligence and communication. Regarding the aggravating factor of Substantial Experience in the Practice of Law, the Respondent was admitted to the practice of law in the state of

Kansas in April 1982, had been practicing law in excess of 18 years, and had substantial experience.

Based upon information submitted to the panel, the panel concluded it appeared the Respondent's prior disciplinary proceedings and the current disciplinary complaint arose because he spread himself too thin and relied too heavily on support personnel. The panel was informed during the hearing that the Respondent has closed his Junction City office and has centralized his practice in Shawnee County.

On the subject of Mitigating Circumstances, several were present. For the mitigating factor of Absence of a Dishonest or Selfish Motive, the Respondent's misconduct was not motivated by dishonesty or selfishness. Regarding Personal Problems if Such Misfortunes Have Contributed to a Violation of the Kansas Rules of Professional Conduct, Respondent was out of the country for 4 weeks in January 2001, which may have contributed to the delay in acting. For the mitigating factor of Remoteness of Prior Offenses, three of his prior disciplinary offenses are remote in time.

In addition to the above-cited factors, the panel thoroughly examined and considered the following Standard 4.43:

"Reprimand is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client."

Based upon the findings of fact, conclusions of law, and the Standard listed above, the panel unanimously recommended that the Respondent be censured by the Kansas Supreme Court, but that the censure not be published in the Kansas Reports.

In addition to unpublished censure, the panel recommended that the Kansas Supreme Court order the Respondent to provide a detailed explanation of his representation to Mr. Carter. The explanation would include a time line detailing the steps that the Respondent and his secretary took to accomplish the goals of the representation. The panel recommended that the Respondent also send a copy of the explanation to the Disciplinary Administrator's office and each member of the hearing panel.

Finally, the panel concluded that costs should be assessed against the Respondent in an amount to be certified by the office of the Disciplinary Administrator.

## DISCUSSION

To warrant a finding of misconduct, the charges must be established by clear and convincing evidence. Supreme Court Rule 211(f) (2002 Kan. Ct. R. Annot. 260); *In re Harris*, 261 Kan. 1063, 1066, 934 P.2d 965 (1997). A hearing panel's report is deemed admitted under Rule 212(c) and (d) (2002 Kan. Ct. R. Annot. 266) when a Respondent fails to file exceptions. *In re Howlett*, 266 Kan. 401, 969 P.2d 890 (1998); accord *In re Juhnke*, 273 Kan. 162, 168-69, 41 P.3d 855 (2002). In the case at hand, since Respondent filed no exceptions to the panel's report, we conclude that the panel's findings of fact are supported by clear and convincing evidence and that the facts established support the panel's conclusions of law. We therefore adopt the panel's findings and conclusions.

The panel recommended unpublished censure, and the Disciplinary Administrator requests the censure be published. We conclude that because of Respondent's prior disciplinary problems, a discipline greater than unpublished censure is warranted.

IT IS THEREFORE ORDERED that Henry O. Boaten be and is hereby disciplined by censure in accordance with Supreme Court Rule 203(a)(3) (2002 Kan. Ct. R. Annot. 224) for his violations of the Kansas Rules of Professional Conduct.

IT IS FURTHER ORDERED that this opinion be published in the official Kansas Reports and that the costs herein be assessed to the Respondent.