No. 94,803

In the Matter of AMY R. MITCHELL, *Respondent*.

(123 P.3d 1279)

Opinion filed December 9, 2005.

*Frank D. Diehl*, assistant disciplinary administrator, argued the cause, and *Stanton A. Hazlett*, disciplinary administrator, was with him on the formal complaint for petitioner.

*John J. Ambrosio*, of Topeka, argued the cause for respondent, and *Amy R. Mitchell*, respondent, argued the cause pro se.

*Per Curiam*: This is an original uncontested proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Amy R. Mitchell, a Kansas attorney whose last registration address with the Clerk of the Appellate Courts of Kansas is Olathe, Kansas. Mitchell was admitted to the practice of law in the state of Kansas in 1999.

The alleged misconduct arises from four complaints, DA8682, DA8683, DA8699, and DA9047, which regard the respondent's representation of clients Shawn Brown, Kelly Anderson, Daniel Markowitz, and Jan Godfrey, respectively.

On October 9, 2003, the Disciplinary Administrator filed a formal complaint. The respondent answered, denying several of the factual allegations. On June 25, 2004, the Disciplinary Administrator filed a second formal complaint. The respondent again denied several of the factual allegations.

A panel of the Kansas Board for Discipline of Attorneys conducted a formal hearing on September 30, 2004. At the hearing, the respondent stipulated to violations of KRPC 1.1 (2004 Kan. Ct. R. Annot. 342) (competence); KRPC 1.3 (2004 Kan. Ct. R. Annot. 354) (diligence); KRPC 1.4 (2004 Kan. Ct. R. Annot. 367) (communication); KRPC 8.1 (2004 Kan. Ct. R. Annot. 480) (bar admission and disciplinary matters); KRPC 8.4(c) (2004 Kan. Ct. R. Annot. 485) (misconduct); and Kansas Supreme Court Rule

207(b) (2004 Kan. Ct. R. Annot. 261) (duty to provide information). The panel later prepared a report containing its findings of fact, conclusions of law, and recommendations for discipline. The respondent filed no exceptions to the hearing panel's report. The underlying facts found by the panel concerning these violations are summarized as follows:

## FINDINGS OF FACT

*Complaint of Shawn Brown* (DA8682)

On approximately November 9, 1999, Shawn Brown retained the respondent to represent him regarding a "slip and fall" accident which occurred at a Hardee's Restaurant on July 28, 1999. On November 29, 1999, Mr. Brown and the respondent entered into a contingent fee contract.

On July 27, 2001, the last day of the statute of limitations, the respondent filed suit on behalf of Mr. Brown. The respondent had not previously handled a "slip and fall" case and did not possess the requisite knowledge necessary to handle such a case.

After the respondent filed suit, she failed to even attempt to achieve service of process on the defendant. She took no action on Mr. Brown's behalf following the filing of the law suit.

On October 7, 2001, the respondent went on maternity leave.

On October 25, 2001, the court reviewed the lawsuit. The respondent did not appear in behalf of Mr. Brown. No one from her firm, Speer, Holliday & Veatch, appeared in behalf of Mr. Brown. The court continued the case to November 19, 2001. At that time, again, no one appeared in behalf of Mr. Brown. Because the respondent failed to achieve service and because no one appeared in behalf of Mr. Brown, on November 19, 2001, the court dismissed Mr. Brown's case.

In November 2001, while on maternity leave, the respondent left the employment of Speer, Holliday & Veatch.

The respondent failed to communicate with Mr. Brown regarding the status of his case. Although Mr. Brown learned on his own that the case had been dismissed, the respondent never informed Mr. Brown of that fact.

According to Mr. Brown, he owed $15,000 in outstanding medical bills due to his injury from his fall at Hardee's.

In September 2002, Mr. Brown filed a complaint with the Disciplinary Administrator's office. Thereafter, on October 22, 2002, the respondent filed a written response to the initial complaint.

*Complaint of Kelly Anderson* (DA 8683)

On July 20, 2002, Kelly R. Anderson and her husband, Cory S. Anderson, met with the respondent regarding a potential stepparent adoption proceeding regarding Mrs. Anderson's 13-year-old daughter. Thereafter, on August 1, 2002, Mr. and Mrs. Anderson retained the respondent to file a stepparent adoption in behalf of Mr. Anderson. The respondent explained after the petition was filed and notice was published in the newspaper, an adoption hearing would be held. She quoted Mr. and Mrs. Anderson a fee of $750 for an uncontested adoption. Mr. and Mrs. Anderson paid the respondent $750 for attorney fees.

On August 2, 2002, the respondent filed a Petition for Adoption in the District Court of Johnson County, Kansas, and scheduled a hearing for September 12, 2002, at 9:30 a.m.

In anticipation of the adoption hearing, the Anderson family planned an adoption party to celebrate the adoption by Mr. Anderson.

In order to prepare for the adoption hearing, Mrs. Anderson called the respondent's office a number of times. However, the respondent failed to return Mrs. Anderson's calls.

By September 9, 2002, the respondent knew that the adoption hearing could not be held because proper service by publication had not been obtained. However, she did not call Mr. or Mrs. Anderson.

On September 11, 2002, at 5 p.m., the respondent called Mr. Anderson on his cellular telephone and notified him that the hearing would have to be continued to another date because proper service had not been obtained. She told Mr. Anderson that it was best to communicate with the respondent by electronic mail.

On September 13, 2002, Mrs. Anderson sent the respondent an electronic message. The respondent did not respond to Mrs. An-

derson's message. After sending the electronic message, Mrs. Anderson called the respondent and left numerous messages. The respondent did not return Mrs. Anderson's calls.

On September 19, 2002, Mrs. Anderson filed a complaint with the Disciplinary Administrator's office. On October 22, 2002, the respondent provided a written response to Mrs. Anderson's complaint.

On October 29, 2002, November 5, 2002, and November 12, 2002, notice of the adoption proceeding was published in The Legal Record. On November 18, 2002, the court held the adoption hearing and entered a Decree of Adoption.

*Complaint of Daniel Markowitz* (DA8699)

On August 19, 2002, William Humbird retained the respondent to represent him in a child support action and paid the respondent $500 for attorney fees. Mr. Humbird lives in Illinois. A hearing was scheduled for September 17, 2002.

Prior to the September 17, 2002, hearing, the respondent assured Mr. Humbird that she would appear in his behalf and that he did not need to appear. However, she failed to appear in court on September 17, 2002.

Mr. Humbird called the respondent numerous times to determine the outcome of the hearing. The respondent failed to return his calls. However, on September 19, 2002, Mr. Humbird was able to reach the respondent. She falsely told Mr. Humbird that she attended the hearing, that the hearing went well, and that the court took the matter under advisement.

Because no one appeared in behalf of Mr. Humbird, the hearing officer entered a default ruling against Mr. Humbird and recommended that the court increase his child support obligation.

Shortly thereafter, Mr. Humbird contacted the Johnson County Trustee's office and learned that the respondent had not appeared at the hearing, that the matter had not been taken under advisement, that the hearing officer had entered a default ruling against Mr. Humbird, and that the case was forwarded to Judge Leben for entry of an order increasing child support.

On September 25, 2002, Mr. Humbird called Daniel J. Markowitz, an attorney practicing in Overland Park and explained the situation. On that same date, Mr. Markowitz entered his appearance in the child support case. On September 26, 2002, Mr. Markowitz wrote to the respondent, set out Mr. Humbird's accusations in summary form, and demanded that she return Mr. Humbird's retainer. On September 30, 2002, Mr. Markowitz received a letter from the respondent with a certified check in the amount of $500 payable to Mr. Humbird.

On October 9, 2002, the court entered its Journal Entry of Judgment regarding this matter. Thereafter, on October 21, 2002, Mr. Markowitz filed a motion to set aside judgment.

On October 16, 2002, Mr. Markowitz filed a complaint with the Disciplinary Administrator's office regarding the respondent. Thomas J. Bath, Jr. was assigned to investigate the complaint. At the time, Jonathan Becker was representing the respondent regarding the disciplinary complaints and filed a written response on her behalf.

On December 2, 2002, Mr. Bath wrote to the respondent, acknowledged receipt of the response from Mr. Becker, and requested that she provide a written response to the complaint. Additionally, Mr. Bath requested that her response include certain information. The respondent failed to provide a written response to the initial complaint and failed to provide the specific information requested by Mr. Bath. On January 31, 2003, Mr. Bath again wrote to the respondent requesting that she comply with his requests made on December 2, 2002. Again, the respondent failed to respond or comply with Mr. Bath's requests.

*Complaint of Jan Godfrey* (DA9047)

In December 2002, Jan Godfrey retained the respondent to represent her in an action for divorce. Ms. Godfrey placed a number of telephone calls to the respondent which, for the most part, the respondent failed to return.

On April 18, 2003, the respondent filed the decree of divorce and property settlement agreement in behalf of Ms. Godfrey in the District Court of Johnson County, Kansas.

On May 6, 2003, the respondent forwarded a proposed Qualified Domestic Relations Order (QDRO) to CUNA Mutual Group, the administrator of Mr. Godfrey's IRA account. However, because of a problem, the funds in the IRA account were not distributed.

During the summer of 2003, Ms. Godfrey placed a number of telephone calls to the respondent. The respondent failed to keep Ms. Godfrey informed regarding the status of the QDRO.

Because so much time passed without having the IRA funds distributed and because the respondent failed to keep Ms. Godfrey informed regarding the status of the QDRO, on August 29, 2003, Ms. Godfrey filed a complaint against her with the Disciplinary Administrator's office.

On September 8, 2003, Alexander M. Walczak wrote to the respondent and asked her to provide him with a written response to the complaint within 15 days. She failed to respond to the letter. Accordingly, Mr. Walczak docketed the complaint for investigation. Thereafter, John M. Parisi was appointed to investigate Ms. Godfrey's complaint.

On November 20, 2003, Mr. Parisi wrote to the respondent, reminded her that she had not provided a written response as requested by Mr. Walczak, and requested that she provide a written response within 7 days. She did not comply with Mr. Parisi's request.

On December 2, 2003, Mr. Parisi again wrote to the respondent. He informed her that he must have her written response by December 15, 2003, or he would submit his report without her input. On December 16, 2003, Mr. Parisi received her hand-delivered written response to the initial complaint.

After receiving the respondent's written response, on January 5, 2004, Mr. Parisi wrote to her and asked for additional information. Specifically, he asked her to provide (1) a copy of the facsimile transmission sheet regarding the July 2003 correspondence from CUNA, (2) a copy of any documentation that she scheduled and confirmed an appointment with Ms. Godfrey, (3) a copy of any correspondence or documentation that would confirm that she had contacted Mr. Godfrey requesting a copy of his most recent IRA statement, (4) a copy of any documentation or communications she

had with Ms. Godfrey regarding the delay in resolving the QDRO, and (5) a copy of the transmittal letter to CUNA from August 2003 when she forwarded a revised QDRO. The respondent did not respond to Mr. Parisi's January 5, 2004, letter, nor did she provide Mr. Parisi with the requested documentation.

## PANEL'S CONCLUSIONS OF LAW

Based upon the findings of fact, the hearing panel concluded, as a matter of law, that the respondent violated KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 8.1, KRPC 8.4(c), and Kansas Supreme Court Rule 207(b), as detailed below.

*KRPC 1.1*

Lawyers must provide competent representation to their clients. "Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." KRPC 1.1 (2004 Kan. Ct. R. Annot. 342). The respondent failed to competently represent Mr. Brown when she failed to obtain service of process and prosecute the personal injury case. Accordingly, the hearing panel concluded that the respondent violated KRPC 1.1.

*KRPC 1.3*

Attorneys must act with reasonable diligence and promptness in representing their clients. See KRPC 1.3. In this case, the respondent failed to provide diligent representation to Mr. Brown when she failed to obtain service of process on the defendant and failed to prosecute the case. Additionally, the respondent failed to diligently represent Mr. Anderson when she failed to obtain proper service by publication prior to the September 12, 2002, hearing date. The respondent also failed to provide diligent representation to Mr. Humbird when she failed to enter her appearance and appear at the September 17, 2002, hearing. Because the respondent failed to act with reasonable diligence and promptness in representing Mr. Brown, Mr. Anderson, and Mr. Humbird, the hearing panel concluded that the respondent violated KRPC 1.3.

## KRPC 1.4

KRPC 1.4(a) provides that "[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information." (2004 Kan Ct. R. Annot. 367.) In this case, the respondent violated KRPC 1.4(a) when she failed to keep Mr. Brown informed regarding the status, including the dismissal of his case. The respondent also violated KRPC 1.4(a) when she failed to return Mrs. Anderson's telephone calls regarding the status of the adoption hearing. Additionally, the respondent failed to provide adequate communication to Mr. Humbird when she failed to return his telephone calls. Finally, the respondent violated KRPC 1.4(a) when she failed to keep Ms. Godfrey informed regarding the status of the QDRO. Accordingly, the hearing panel concluded that the respondent violated KRPC 1.4(a).

## KRPC 8.4(c)

"It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation." KRPC 8.4(c). The respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation when she falsely informed Mr. Humbird that she attended the September 17, 2002, hearing and that the court took the matter under advisement. The hearing panel concluded that the respondent violated KRPC 8.4(c).

## KRPC 8.1(b) and Supreme Court Rule 207(b)

Lawyers must cooperate in disciplinary investigations. KRPC 8.1(b) and Kansas Supreme Court Rule 207(b) provide the requirement in this regard. KRPC 8.1(b) provides: "[A] lawyer in connection with a . . . disciplinary matter, shall not . . . knowingly fail to respond to a lawful demand for information from [a] . . . disciplinary authority." (2004 Kan. Ct. R. Annot. 480.) Supreme Court Rule 207 (b) provides: "It shall be the duty of each member of the bar of this state to aid the Supreme Court, the Disciplinary Board, and the Disciplinary Administrator in investigations concerning complaints of misconduct, and to communicate to the Disciplinary Administrator any information he or she may have affecting such matters." (2004 Kan. Ct. R. Annot. 261.)

In this case, the respondent failed to cooperate in the investigation of Mr. Markowitz' complaint and Ms. Godfrey's complaint. Because the respondent knowingly failed to properly cooperate in the disciplinary investigations, the hearing panel concluded that the respondent violated KRPC 8.1(b) and Kansas Supreme Court Rule 207(b).

## PANEL'S RECOMMENDATION

The hearing panel next considered factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter "Standards"). Pursuant to Standard 3, the factors to be considered are the duties violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

On the subjects of Duties Violated and Mental State, the respondent knowingly violated her duty to her clients to provide competent and diligent representation. She also violated her duty to her clients to provide adequate communication and to the legal profession to maintain personal integrity. Finally, the respondent violated her duty to the legal profession to cooperate in disciplinary proceedings.

On the subject of Injury, as a result of the respondent's misconduct, she caused actual and potential harm to her clients and the legal profession.

On the subject of Aggravating Factors, several were present. In regard to Dishonest or Selfish Motive, the respondent lied to Mr. Humbird regarding the September 17, 2002, hearing.

Regarding a Pattern of Misconduct, included in this case are four complaints. Some of the complaints involve similar misconduct. Accordingly, the respondent engaged in a pattern of misconduct.

Regarding Multiple Offenses, the respondent violated KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 8.1(b), KRPC 8.4(c), and Supreme Court Rule 207(b). As such, the respondent committed multiple offenses.

Several Mitigating circumstances were also present. In regard to the Absence of a Prior Disciplinary Record, the respondent has not previously been disciplined.

On the subject of Personal or Emotional Problems if Such Misfortunes have Contributed to a Violation of the Kansas Rules of Professional Conduct, after the respondent retained Mr. Ambrosio to represent her in the disciplinary case, he directed the respondent to submit to a psychological evaluation by William Albott, Ph.D., a psychologist. According to Dr. Albott, Ms. Mitchell has experienced severe symptoms of anxiety and depression and the "personality and psychological issues identified . . . seem to have led into behaviors which ultimately brought forth the complaints filed."

Regarding respondent's Inexperience in the Practice of Law, the Kansas Supreme Court admitted the respondent to practice law in 1999. At the time she engaged in misconduct, she had been practicing law for a period of 2 years. Accordingly, the hearing panel concludes that she was inexperienced in the practice of law at the time she engaged in the misconduct.

Regarding Previous Good Character and Reputation in the Community Including any Letter from Clients, Friends, and Lawyers in Support of the Character and General Reputation of the Attorney, the respondent is an active and productive member of the bar in Johnson County, Kansas. She enjoys the respect of her peers and clients and generally possesses a good character and reputation as evidenced by several letters received by the hearing panel.

On the topic of Remorse, at the hearing on the Formal Complaint, the respondent expressed genuine remorse.

In addition to the above-cited factors, the hearing panel thoroughly examined and considered the following Standards:

"Suspension is generally appropriate when: (a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or (b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client." Standard 4.42.

"Reprimand is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client." Standard 4.43.

"Suspension is generally appropriate when a lawyer engages in an area of practice in which the lawyer knows he or she is not competent, and causes injury or potential injury to a client." Standard 4.52.

"Reprimand is generally appropriate when a lawyer: (a) demonstrates failure to understand relevant legal doctrines or procedures and causes injury or potential injury to a client; or (b) is negligent in determining whether he or she is competent to handle a legal matter and causes injury or potential injury to a client." Standard 4.53.

"Suspension is generally appropriate when a lawyer knowingly deceives a client, and causes injury or potential injury to the client." Standard 4.62.

At the hearing, the respondent recommended that she be placed on probation, subject to the terms and conditions contained in her proposed plan of probation. The panel determined that in order to recommend that a respondent be placed on probation, it must make specific findings. In that regard, it acknowledged that Supreme Court Rule 211(g) (2004 Kan. Ct. R. Annot. 277) provides, in pertinent part, as follows:

"(g) Requirements of Probation

"(1)  If the Respondent intends to request that the Respondent be placed on probation for violating the Kansas Rules of Professional Conduct or the Kansas Supreme Court Rules, the Respondent shall provide each member of the Hearing Panel and the Disciplinary Administrator with a workable, substantial, and detailed plan of probation at least ten days prior to the hearing on the Formal Complaint. The plan of probation must contain adequate safeguards that will protect the public and ensure the Respondent's full compliance with the disciplinary rules and orders of the Supreme Court.

"(2)  If the Respondent provides each member of the Hearing Panel and the Disciplinary Administrator with a plan of probation, the Respondent shall immediately and prior to the hearing on the Formal Complaint put the plan of probation into effect by complying with each of the terms and conditions of the probation plan.

"(3)  The Hearing Panel shall not recommend that the Respondent be placed on probation unless:

"(i) the Respondent develops a workable, substantial, and detailed plan of probation and provides a copy of the proposed plan of probation to the Disciplinary Administrator and each member of the Hearing Panel at least ten days prior to the hearing on the Formal Complaint;

"(ii) ithe Respondent puts the proposed plan of probation into effect prior to the hearing on the Formal Complaint by complying with each of the terms and conditions of the probation plan;

"(iii) at the hearing on the Formal Complaint, the Respondent presents evidence that the case involves unique circumstances (unique circumstances are circumstances from which it could be inferred that the Respondent's misconduct was a one time response to adversity and that it would be highly

unlikely that the Respondent would repeat the mistake);
    "(iv) the misconduct can be corrected by probation; and
    "(v) placing the Respondent on probation is in the best interests of the legal profession and the citizens of the State of Kansas."

In this case, the respondent provided each member of the hearing panel and the Disciplinary Administrator with a workable, substantial, and detailed plan of probation. The plan contained adequate safeguards designed to protect the public and ensure the respondent's full compliance with the disciplinary rules and orders of the Supreme Court. See Kansas Supreme Court Rule 211(g)(1). The respondent immediately and prior to the hearing on the formal complaint put the plan of probation into effect by complying with the terms and conditions of the plan. See Kansas Supreme Court Rule 211(g)(2).

The respondent presented evidence that the case involves unique circumstances, the misconduct can be corrected by probation, and placing the respondent on probation is in the best interests of the legal profession and the citizens of the State of Kansas. See Kansas Supreme Court Rule 211(g)(3).

The hearing panel was impressed with the respondent's testimony regarding the weeks leading up to the hearing on the formal complaint. The respondent testified about the impact that the evaluation has had on her life.

Based upon the testimony of the witnesses, the exhibits admitted into evidence, findings of fact, conclusions of law, and the Standards listed above, the hearing panel unanimously recommended that the respondent be suspended from the practice of law in the state of Kansas for a period of 1 year. The hearing panel further recommended that the respondent be placed on probation subject to the following terms and conditions:

"1. Respondent will continue her treatment for depression and anxiety with a Psychologist or Social Worker approved by Dr. William Albott. This treatment shall continue throughout the period of supervised probation unless the treating Doctor and Dr. Albott deem treatment is no longer necessary. The treating mental health worker shall notify the Disciplinary Administrator in the event that Respondent discontinues treatment against the recommendation of the mental health specialist. The Respondent shall provide the treating mental health worker

with any appropriate release of information necessary to allow the professional to provide such information to the Disciplinary Administrator.

"2. In the event it becomes necessary for the Respondent to take medication, the Respondent shall have regular contact with a qualified medical professional regarding said medication. The Respondent shall follow the qualified medical professional's recommendation regarding any medications prescribed.

"3. The treating mental health professional shall make periodic reports to the Disciplinary Administrator's Office. Said reports shall update the Disciplinary Administrator on the need for treatment and the current treatment modality.

"4. The Respondent's practice shall consist of criminal defense, domestic relations and any other cases related to criminal defense, *i.e.*, drivers license suspension cases, drug tax cases, etc. Further, the Respondent may continue her practice as prosecutor in City Court. The Respondent shall not engage in the representation of clients in civil matters, including personal injury cases.

"5. The Respondent's practice will be supervised by Nancy Orrick, a licensed attorney in good standing, in Kansas City, Kansas. The Respondent shall allow Ms. Orrick access to her files, calendar, operating account and trust account records. The Respondent shall comply with any request made by the supervising attorney. During the first year of supervision, the Respondent shall meet with the supervising attorney weekly. During the final six months of the probation period, the Respondent shall meet with Ms. Orrick per her direction. Ms. Orrick shall prepare a detailed monthly report to the Disciplinary Administrator regarding Respondent's status on probation.

"6. Ms. Orrick shall conduct an immediate and detailed audit of Respondent's files. Six months after the completion of the first audit, Ms. Orrick shall conduct a second audit. At the completion of the supervised probation, Ms. Orrick shall conduct a third audit. After each audit Ms. Orrick shall make a report regarding same. If Ms. Orrick discovers any violations of the Kansas Rules of Professional Conduct, she shall include such information in her report. Ms. Orrick shall provide the Disciplinary Administrator and the Respondent with a copy of each audit report. The Respondent shall follow all recommendations and correct all deficiencies noted in Ms. Orrick's periodic audit reports.

"7. The Supervisor shall determine if the office procedures and diary procedures for Respondent are appropriate. The Supervising Attorney shall cause Respondent to have a diary or calendaring system, letters for client contact, letters for notices to clients of hearings and scheduled meetings, and a method to track all phone messages and phone contacts from clients and the responses thereto.

"8. Procedures shall be commenced wherein all phone contacts and phone messages are handled on a daily basis, unless a trial schedule prevents phone contacts with clients. No phone message, request or entreaty from a client shall go more than three days without Respondent contacting the client.

"9. Respondent shall, at the weekly meetings with Supervisor, review all new retained and appointed cases. Further, Respondent shall present the Supervisor with diary and calendar information and appropriate fee information. Additionally,

at that meeting, Respondent and the Supervisor shall review the following week's schedule in order to assure notice has been sent to the appropriate parties, appropriate preparation has been carried out and all updates to the files have been completed.

"10. The Supervisor shall do a monthly report in regard to the weekly meetings and submit same to the Disciplinary Administrator.

"11. Ms. Nancy Orrick will be acting as an officer and an agent of the Court while supervising the probation and monitoring the legal practice of the Respondent. The supervisor shall be afforded all immunities granted by Supreme Court Rule 223 [2004 Kan. Ct. R. Annot. 323] during the course of her activities pursuant to this Order.

"12. Within ten days of the panel decision, the Respondent shall file with the Disciplinary Administrator written office procedures designed to monitor the status, deadlines and Court appearances of all matters in which she has undertaken representation. The Respondent shall modify that procedure if directed to do so by the Disciplinary Administrator.

"13. The Respondent shall follow all written office procedures.

"14. The Respondent shall continue to cooperate with the Disciplinary Administrator. If the Disciplinary Administrator requires any further information, the Respondent shall timely provide such information.

"15. The Respondent shall continue to maintain professional liability insurance.

"16. The Respondent shall not violate the terms of her probation or the provisions of the Kansas Rules of Professional Conduct. In the event that the Respondent violates any of the terms of her probation or any of the provisions of the Kansas Rules of Professional Conduct during the probationary period, the Respondent shall immediately report such violations to her supervisor and to the Disciplinary Administrator.

"17. Respondent shall follow the dictates of Supreme Court Rule 211(g)."

The hearing panel also favorably noted the impact of the participation of respondent's attorney, John Ambrosio, in the case:

"Mr. Ambrosio submitted new answers to the formal complaints. He directed the Respondent to meet with William Albott, Ph.D. and submit to a thorough psychological evaluation. He developed a substantial, detailed, and workable plan of probation. He located a qualified attorney to supervise the Respondent's practice. And, he assisted the Respondent in putting the plan of probation into effect. The Hearing Panel is certain that its recommendation would have been different had the steps taken by Mr. Ambrosio not been taken."

Additionally, the hearing panel concluded that costs should be assessed against the respondent in an amount to be certified by the office of the Disciplinary Administrator.

## DISCUSSION

To warrant a finding of misconduct, the charges must be established by clear and convincing evidence. Supreme Court Rule 211(f) (2004 Kan. Ct. R. Annot. 275); *In re Rathbun*, 275 Kan. 920, 929, 69 P.3d 537 (2003). A hearing panel's report is deemed admitted under Rule 212(c) and (d) (2004 Kan. Ct. R. Annot. 285) when a respondent fails to file exceptions. *In re Boaten*, 276 Kan. 656, 663, 78 P.3d 458 (2003).

In the present case, since the respondent filed no exceptions to the panel's report, we conclude that the panel's findings of fact are supported by clear and convincing evidence and that the facts established support the panel's conclusions of law. We therefore adopt the panel's findings and conclusions. The panel recommended a 1-year suspension and supervised probation, but did not specify the term of probation. The Disciplinary Administrator recommends a 2-year period from the date of this court's order. We agree with the Disciplinary Administrator's recommendation.

IT IS THEREFORE ORDERED that Amy R. Mitchell be suspended from the practice of law in the state of Kansas for a period of 1 year effective as of the date of this opinion, in accordance with Supreme Court Rule 203(a)(2) (2004 Kan. Ct. R. Annot. 237). Her suspension is stayed and she is placed on supervised probation for a period of 2 years effective as of the date of this opinion under the conditions recommended by the hearing panel which are set forth in the opinion. If she complies with each condition throughout the period of probation, she may proceed with discharge from probation in accordance with Supreme Court Rule 211(g) (7) (2004 Kan. Ct. R. Annot. 275).

IT IS FURTHER ORDERED that if Mitchell fails to abide by the conditions set out herein, a show cause order shall issue to Mitchell, and this court shall take whatever disciplinary actions it deems just and proper, without further formal proceedings.

IT IS FURTHER ORDERED that this opinion be published in the official Kansas Reports and that respondent pay the costs of these proceedings.

LOCKETT, J., Retired, assigned.