No. 97,218

In the Matter of RUSSELL W. HASENBANK, *Respondent*.
(151 P.3d 1)

Opinion filed February 2, 2007.

*Janith A. Davis*, assistant disciplinary administrator, argued the cause, and *Stanton A. Hazlett*, disciplinary administrator, was with her on the formal complaint for petitioner.

*K. Mike Kimball*, of Ulysses, argued the cause for respondent, and *Russell W. Hasenbank*, respondent, argued the cause pro se.

*Per Curiam*: This is an original uncontested proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Russell W. Hasenbank, a Kansas attorney whose last registration address with the Clerk of the Appellate Courts of Kansas is in Liberal, Kansas. Hasenbank was admitted to the practice of law in the state of Kansas in 1994.

The alleged misconduct arises from five complaints, DA8184, DA8780, DA9354, DA9550, and DA9632, which concern the respondent's representation of clients Gary and Zilla Cline, Laurie and Alan Barber, Earl Shinogle, Jose Ortega-Najera, and Rafael Flores.

In April 2006, the Disciplinary Administrator filed a formal complaint. The respondent answered admitting most of the factual allegations. The respondent also proposed a probation plan asking for, among other things, supervised probation for 4 years. The Disciplinary Administrator agreed with the plan, but also requested a 1-year suspension from the practice of law, which would be suspended during the probationary period.

A panel of the Kansas Board for Discipline of Attorneys conducted a formal hearing on May 9, 2006. The respondent filed no exceptions to the report.

## FINDINGS OF FACT

*Complaint of Gary and Zilla Cline* (DA8184)

"2. In 1997, Gary and Zilla Cline of Hooker, Oklahoma, were involved in an automobile accident. Mr. and Mrs. Cline hired the Respondent to represent them in a personal injury action.

"3. In September 2000, the Respondent settled Mr. and Mrs. Cline's claim. However, the Respondent failed to settle the PIP lien and failed to distribute the settlement funds.

"4. After the Respondent settled the personal injury claim, the Respondent failed to adequately communicate with Mr. and Mrs. Cline.

"5. On March 9, 2001, Mr. and Mrs. Cline filed a written complaint with the Disciplinary Administrator's office. David J. Rebein was appointed to investigate the complaint. Mr. Rebein traveled to Hooker, Oklahoma, and visited with Mr. and Mrs. Cline. While meeting with Mr. and Mrs. Cline, Mr. Rebein called the insurance company on their behalf and settled the PIP lien.

"6. Mr. Rebein contacted the Respondent and encouraged him to close the case in an expeditious manner. The Respondent immediately closed the case, distributed the settlement proceeds, and provided a copy of the settlement sheet to Mr. Rebein."

The respondent applied to participate in the Attorney Diversion Program regarding the Clines' complaint. His application was approved and, initially, he complied with the requirements of the diversion agreement. However, later, the respondent failed to comply with the requirements of the diversion agreement. The respondent failed to respond to many letters written by members of the Disciplinary Administrator's office. Accordingly, he was removed from the Attorney Diversion Program and traditional procedures resumed.

### Complaint of Laurie and Alan Barber (DA8780)

"7. On July 31, 2002, Laurie and Alan Barber retained the Respondent to file a child in need of care case regarding two minor children of Alan Barber's brother. The Respondent filed the case and the matter was scheduled for hearing.

"8. In late October 2002, the Respondent met with Mr. and Mrs. Barber and discussed the likely outcome of the hearing. Because the Respondent believed that the natural mother would prevail at the hearing, he advised them of an alternative approach. The Barbers wanted to be able to maintain contact with the children and monitor the natural mother's care of the children. As a result, the Respondent drafted an agreement which included a provision that the maternal grandparents would be the co-guardians and co-conservators of the children.

"9. During early November 2002, the Respondent negotiated an agreement with opposing counsel. Negotiating the agreement was not a simple task for the Respondent, however, because his clients and the maternal grandparents repeatedly altered the terms of what they would accept in the agreement.

"10. The agreement included separate signature pages for each party. The maternal grandparents and the natural mother were to sign the agreement in Texas

and return the signed agreement to Kansas via facsimile. On November 8, 2002, Mr. and Mrs. Barber signed the agreement and the children were transferred to the maternal grandparents in Texas.

"11. After the children were transferred to the maternal grandparents in Texas, Mrs. Barber attempted to contact the Respondent regarding the enforcement of the agreement. The Respondent failed to return her telephone calls.

"12. In December 2002, because the Respondent would not return Mrs. Barber's telephone calls, she called Clinton B. Peterson, the children's guardian ad litem, regarding the agreement. Mr. Peterson had not received a copy of the agreement signed by the maternal grandparents and the natural mother. Because he had not received a copy of the agreement signed by the maternal grandparents and the natural mother, Mr. Peterson mistakenly believed that they had not signed the agreement. Mr. Peterson informed Mrs. Barber of his mistaken belief. However, the maternal grandparents and the natural mother signed the agreement on November 8, 2002.

"13. Because the Respondent failed to return Mr. and Mrs. Barber's telephone calls, Mr. and Mrs. Barber continued to mistakenly believe that the maternal grandparents and natural mother did not sign the agreement and that, therefore, the Respondent failed to fulfill the desired objectives of the representation."

## Complaint of Earl Shinogle (DA9354)

"14. In July 2002, Earl Shinogle retained the Respondent to pursue a claim for personal injury and property damage for an accident that occurred in Seward County, Kansas.

"15. Previously, an oil and gas company had laid an oil pipe under a road. In Mr. Shinogle's opinion, the settling of the road, due to the placement of the pipe, caused a rut in the road. There was no warning of the rut and while transporting farm equipment, Mr. Shinogle hit the rut which caused him personal injury and damage to his farm equipment.

"16. The Respondent sent a demand letter to the oil and gas company on behalf of Mr. Shinogle. The oil and gas company responded, denying liability. Thereafter, the Respondent took no additional action on behalf of Mr. Shinogle.

"17. Throughout 2003 and into 2004, Mr. Shinogle repeatedly stopped by the Respondent's office and called for him on the telephone in an effort to determine the status of his claim against the oil and gas company. The Respondent made no attempt to respond to Mr. Shinogle's efforts at communication.

"18. In 2004, Rick Yoxall, the Respondent's (former) partner, informed Mr. Shinogle that the Respondent was no longer employed at the firm and the applicable statute of limitations on Mr. Shinogle's claim had passed."

## Complaint of Jose Oretga-Najera (DA9550)

"19. Following his conviction of three felonies in the Ford County District Court, Jose Ortega-Najera appealed his convictions.

"20. On September 10, 2004, the Kansas Court of Appeals issued an order remanding the case to the district court for a hearing pursuant to *State v. Van Cleave*, 239 Kan. 117, 716 P.2d 580 (1986). The court's order directed the appellant to file reports with the Court of Appeals explaining the status of the proceeding in the district court.

"21. On January 10, 2005, the Court of Appeals granted Mr. Ortega-Najera's pro se motion for the appointment of new appellate counsel. On January 18, 2005, the Ford County District Court entered an order appointing the Respondent to represent Mr. Ortega-Najera.

"22. On January 26, 2005, the Court of Appeals entered an order directing the Respondent to file a report on the status of the remand hearing by February 28, 2005. The Respondent failed to comply with the order.

"23. On April 7, 2005, the Court of Appeals entered an order, noting the absence of a status report and directing the Respondent to file a status report by April 22, 2005. The Respondent failed to comply with the order.

"24. On May 10, 2005, the Court of Appeals entered an order directing the Respondent to show cause why he should not be dismissed as counsel for his failure to comply with the orders of the court. The Respondent failed to respond to the court's order to show cause.

"25. Kathie Garman, Deputy Clerk of the office of the Clerk of the Appellate Courts, attempted to contact the Respondent by telephone. The Respondent failed to return Ms. Garman's telephone calls.

"26. On May 26, 2005, the Court of Appeals removed the Respondent as counsel for Mr. Ortega-Najera."

### *Complaint of Rafael Flores* (DA9632)

"27. Following Rafael Flores' convictions of felony murder and attempted voluntary manslaughter, on April 15, 2005, the Ford County District Court appointed the Respondent to represent Mr. Flores in an appeal of his sentence to the Kansas Supreme Court.

"28. Thereafter, the Clerk of the Appellate Courts notified the Respondent that his brief was due by May 26, 2005. The Respondent failed to file a brief on behalf of Mr. Flores by May 26, 2005.

"29. On July 11, 2005, the court entered an order directing the Respondent to show cause why Mr. Flores' appeal should not be dismissed for his failure to file a brief on behalf of Mr. Flores. The court also ordered the Respondent to file a brief by July 25, 2005. The Respondent failed to respond to the court's order to show cause or to file a brief on behalf of Mr. Flores by July 25, 2005.

"30. On August 5, 2005, the court entered an order directing the Respondent to show cause by August 15, 2005, why he should not be removed as counsel for Mr. Flores. The Respondent failed to respond to the court's order to show cause.

"31. On August 17, 2005, the Supreme Court removed the Respondent as counsel for Mr. Flores and remanded the case to the Ford County District Court for the appointment of new counsel."

## PANEL'S CONCLUSIONS OF LAW

Based upon the findings of fact, the hearing panel concluded as a matter of law that the respondent had multiple violations of the Kansas Rules of Professional Conduct (KRPC), including KRPC 1.3 (2006 Kan. Ct. R. Annot. 371), KRPC 1.4 (2006 Kan. Ct. R. Annot. 386), and KRPC 3.2 (2006 Kan. Ct. R. Annot. 462), as detailed below.

*KRPC1.3*

Attorneys must act with reasonable diligence and promptness in representing their clients. (2006 Kan. Ct. R. Annot. 371). In this case, the respondent failed to provide diligent representation when he failed to (1) settle the PIP lien and distribute the settlement proceeds in connection to his representation of Gary and Zilla Cline, (2) file suit on behalf of Mr. Shinogle, (3) prosecute Mr. Ortega-Navera's appeal and (4) prosecute Mr. Flores' appeal. Because the respondent failed to act with reasonable diligence and promptness in representing Mr. and Mrs. Cline, Mr. Shinogle, Mr. Ortega-Navera, and Mr. Flores, the hearing panel concluded that the respondent violated KRPC 1.3.

*KRPC 1.4*

KRPC 1.4(a) provides that "[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information." (2006 Kan. Ct. R. Annot. 386). In this case, the respondent violated KRPC 1.4(a) when he failed to keep Mr. and Mrs. Cline, Mr. and Mrs. Barber, and Mr. Shinogle reasonably informed regarding the status of their representations. Accordingly, the hearing panel concluded that the respondent violated KRPC 1.4(a).

*KRPC 3.2*

An attorney violates KRPC 3.2 if he fails to make reasonable efforts to expedite litigation consistent with the interests of his client. (2006 Kan. Ct. R. Annot. 462). In this case, the respondent failed to expedite litigation when he failed to prosecute Mr. Ortega-Navera's and Mr. Flores' appeals. Accordingly, the hearing panel concluded that the respondent violated KRPC 3.2.

*KRPC 8.1 and Supreme Court Rule 207*

In addition to alleging that the respondent violated KRPC 1.3, KRPC 1.4, and KRPC 3.2, the Deputy Disciplinary Administrator also alleged that the respondent violated KRPC 8.1 (2006 Kan. Ct. R. Annot. 505) and Kansas Supreme Court Rule 207 (2006 Kan. Ct. R. Annot 268).

The Deputy Disciplinary Administrator specifically alleged that the respondent violated KRPC 8.1 and Kansas Supreme Court Rule 207 by failing to comply with the terms and conditions of the original diversion agreement, by failing to respond to letters concerning his participating in the Attorney Diversion Program, and by failing to execute the new diversion agreement.

The hearing panel concluded that failing to comply with the terms and conditions of the original diversion agreement, failing to respond to letters concerning his participating in the Attorney Diversion Program, and failing to execute the new diversion agreement, individually or collectively, does not amount to a violation of KRPC 8.1 and Kansas Supreme Court Rule 207.

The respondent faces other consequences by failing to comply with the terms and conditions of the original diversion agreement, by failing to respond to letters concerning his participation in the Attorney Diversion Program, and by failing to execute the new diversion agreement. After the respondent failed to comply with the Attorney Diversion Program, traditional disciplinary procedures resumed.

It would be unfair to find that failing to complete or cooperate with the Attorney Diversion Program constitutes separate violations of the rules.

## PANEL'S RECOMMENDATION

The hearing panel next considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter "Standards"). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

On the subjects of Duties Violated and Mental State, the respondent negligently violated his duty to his clients to provide diligent representation and adequate communication.

On the subject of Injury, as a result of the respondent's misconduct, the respondent caused actual injury.

On the subject of Aggravating Factors, several were present. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present:

Regarding a pattern of misconduct, included in this case are five complaints. The complaints involve similar misconduct. Accordingly, the respondent engaged in a pattern of misconduct.

Regarding multiple offenses, the respondent violated KRPC 1.3, KRPC 1.4, and KRPC 3.2. As such, the respondent committed multiple offenses.

Several mitigating circumstances were also present. Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

Regarding the absence of a prior disciplinary record, the respondent has not previously been disciplined.

Regarding the absence of a dishonest or selfish motive, dishonesty and selfishness were not motivating factors in this case.

Regarding personal or emotional problems if such misfortunes have contributed to a violation of the Kansas Rules of Professional Conduct, during the time period in which the respondent engaged in the misconduct, the respondent was having marital difficulties.

Regarding previous good character and reputation in the community including any letters from clients, friends, and lawyers in support of the character and general reputation of the attorney, the respondent is an active and productive member of the bar in Liberal, Kansas. He enjoys the respect of his peers and clients and generally possesses a good character and reputation.

Regarding mental disability, a mental disability is a factor in mitigation when there is medical evidence that the respondent is af-

fected by a mental disability, the mental disability caused the misconduct, the respondent's recovery from the mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation, and the recovery arrested the misconduct and recurrence of that misconduct is unlikely. In this case, the respondent has had serious mental health issues. The respondent suffers from depression and bipolar disorder. At times, the respondent's depression has been so severe that he has been unable to get out of bed. The hearing panel concluded that the respondent is affected by a mental disability, the respondent's depression caused the misconduct, the respondent's recovery from the depression has been demonstrated by a meaningful and sustained period of successful rehabilitation, and the respondent's recovery from depression has arrested the misconduct and recurrence of the misconduct is unlikely.

Regarding remorse, at the hearing on the formal complaint, the respondent expressed genuine remorse.

In addition to the above-cited factors, the hearing panel thoroughly examined and considered the following Standard:

"Suspension is generally appropriate when: (a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or (b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client." Standard 4.42.

## RECOMMENDATION

The Deputy Disciplinary Administrator recommended that the respondent be suspended from the practice of law for 1 year, that the suspension be stayed, and that the respondent be placed on probation for 4 years, subject to the terms and conditions detailed in the respondent's plan of probation. The respondent recommended that he be placed on probation pursuant to his plan of probation.

The Kansas Supreme Court adopted a rule which dictates the procedure to follow when a respondent requests probation. Rule 211 (2006 Kan Ct. R. Annot. 286-87) provides in part:

"(g) Requirements of Probation
    "(1)  If the Respondent intends to request that the Respondent be placed

on probation for violating the Kansas Rules of Professional Conduct or the Kansas Supreme Court Rules, the Respondent shall provide each member of the Hearing Panel and the Disciplinary Administrator with a workable, substantial, and detailed plan of probation at least ten days prior to the hearing on the Formal Complaint. The plan of probation must contain adequate safeguards that will protect the public and ensure the Respondent's full compliance with the disciplinary rules and orders of the Supreme Court.

"(2)    If the Respondent provides each member of the Hearing Panel and the Disciplinary Administrator with a plan of probation, the Respondent shall immediately and prior to the hearing on the Formal Complaint put the plan of probation into effect by complying with each of the terms and conditions of the probation plan.

"(3)    The Hearing Panel shall not recommend that the Respondent be placed on probation unless:

"(i)    the Respondent develops a workable, substantial, and detailed plan of probation and provides a copy of the proposed plan of probation to the Disciplinary Administrator and each member of the Hearing Panel at least ten days prior to the hearing on the Formal Complaint;

"(ii)    the Respondent puts the proposed plan of probation into effect prior to the hearing on the Formal Complaint by complying with each of the terms and conditions of the probation plan;

"(iii)    · the misconduct can be corrected by probation; and

"(iv)    placing the Respondent on probation is in the best interests of the legal profession and the citizens of the State of Kansas. (2006 Kan. Ct. R. Annot. 286-87)."

## The hearing panel found:

"In this case, the respondent developed a workable, substantial, and detailed plan of probation and provided a copy of the plan to the Disciplinary Administrator months before the hearing. Further, the Respondent put the proposed plan of probation into effect well in advance of the hearing and complied with each of the terms and conditions of the probation plan. Finally, the hearing panel concluded that the Respondent's misconduct can be corrected by probation and that it is in the best interests of the legal profession and the citizens of Kansas to place the Respondent on probation.

"Based upon the findings of fact, conclusions of law, and the Standards listed above, the hearing panel unanimously recommends that the Respondent be placed on probation subject to the following terms and conditions for a period of 4 years:

"1. *Psychiatric Treatment.* The Respondent shall continue his treatment for depression and bipolar disorder with Alice Griffitt of Southwest Psychiatric Clinic, throughout the period of supervised probation unless, in Ms. Griffitt's opinion, continued treatment is no longer necessary. The Respondent shall comply with recommendations made by Ms. Griffitt, including recommendations regarding

medications. Ms. Griffitt shall notify the Disciplinary Administrator's office in the event that the Respondent discontinues treatment against the recommendation of Ms. Griffitt during the probationary period. The Respondent shall maintain a current release of information to allow Ms. Griffitt to provide such information to the Disciplinary Administrator's office, Don Scott [Seward County Attorney], and Don Zemites [Director of the Kansas Impaired Lawyers Assistance Program; see Rule 206 (2006 Kan. Ct. R. Annot. 265)].

"2. *Psychological Treatment.* The Respondent shall continue his treatment for depression and bipolar disorder with James Karlin, of Area Southwest Guidance Center, throughout the period of supervised probation unless, in Mr. Karlin's opinion, continued treatment is no longer necessary. The Respondent shall comply with recommendations made by Mr. Karlin, including referrals to other treatment providers. Mr. Karlin shall notify the Disciplinary Administrator's office in the event that the respondent discontinues treatment against the recommendation of Mr. Karlin during the probationary period. On a quarterly basis throughout the period of probation, Mr. Karlin shall provide the Disciplinary Administrator's office with a report regarding the Respondent's progress in therapy. The reports are to be provided January 1, April 1, July 1, and October 1, of each year during the period of probation. The Respondent shall maintain a current release of information to allow Mr. Karlin to provide information to the Disciplinary Administrator's office, Don Scott, and Don Zemites.

"3. *Limitation of Practice.* The Respondent shall limit his practice to criminal prosecutions as an assistant county attorney in a county attorney's office in which the county attorney has a minimum of 10 years of experience as the county attorney. The Respondent is currently employed by the Seward County Attorney's office, Don Scott, County Attorney. Any change in employment must first be approved by the Disciplinary Administrator's office, prior to the respondent accepting the new employment. If a case handled by the Respondent should be the subject of an appeal before the Kansas Court of Appeals or the Kansas Supreme Court, the Respondent shall not be lead counsel for the appeal. The Respondent may assist the attorney appointed to handle the case. Prior to his employment with the Seward County Attorney's office, the Respondent was appointed to serve as guardian ad litem and as conservator in various cases. The Respondent may continue to serve as guardian ad litem for existing appointments on new or reoccurring matters in the existing cases (*e.g.*, issuing or renewal of oil and gas leases by a conservatorship), but shall not accept any new appointments in this regard.

"4. *Practice Supervision.* The Respondent's practice will be supervised by Seward County Attorney, Don Scott. The Respondent and Mr. Scott shall prepare a monthly report to the Disciplinary Administrator's office regarding the Respondent's status on probation. The monthly report shall include a current case list, a work attendance report, Mr. Scott's opinion regarding the Respondent's work product for the month, Mr. Scott's opinion regarding the Respondent's ability to manage his mental health issues for the month, and any concerns that Mr. Scott has regarding the Respondent's status on probation. The case list shall identify

each case by name, set forth all deadlines scheduled by the court, include a statement regarding whether each deadline for the month was met, and provide an explanation if a continuance was requested. In the event a deadline is missed, the Respondent and Mr. Scott shall immediately report the missed deadline to the Disciplinary Administrator's office.

"5. *Impairment Monitor.* Don Scott and Don Zemites, or his designee, will serve as the Respondent's impairment monitors [volunteer counselors] throughout the Respondent's period of probation. The provisions of Kansas Supreme Court Rule 206 (including confidentiality and immunity) shall apply to the impairment monitors, except that the Respondent may choose to execute a waiver allowing the impairment monitors to communicate with the Disciplinary Administrator's office regarding otherwise confidential information. The impairment monitors shall immediately notify the Disciplinary Administrator's office if the Respondent fails to maintain adequate contact with the impairment monitors or refuses to comply with any requests made by the impairment monitors.

"6. *Communication.* The Respondent shall make every effort to return telephone calls within 2 business days of receipt. The Respondent shall notify the Disciplinary Administrator within 14 days of any change of address.

"7. *Continued Cooperation.* The Respondent shall continue to cooperate with and attend any scheduled meetings with the Disciplinary Administrator's office. If the Disciplinary Administrator's office requests any additional information, the Respondent shall timely provide such information.

"8. *Additional Violations.* The Respondent shall not violate the terms of his probation or the provisions of the Kansas Rules of Professional Conduct. In the event that the Respondent violates any of the terms of probation or any of the provisions of the Kansas Rules of Professional Conduct at any time during the probationary period, the Respondent shall immediately report such violation to the Disciplinary Administrator. The Disciplinary Administrator shall take immediate action directing the Respondent to show cause why the probation should not be revoked."

## DISCUSSION

To warrant a finding of misconduct, the charges must be established by clear and convincing evidence. Supreme Court Rule 211(f) (2006 Kan. Ct. R. Annot. 284); *In re Rathburn,* 275 Kan. 920, 929, 69 P.3d 537 (2003). A hearing panel's report is deemed admitted under Rule 212(c) and (d) (2006 Kan. Ct. R. Annot. 295) when a respondent fails to file exceptions. *In re Boaten,* 276 Kan. 656, 663, 78 P.3d 458 (2003).

In the present case, since the respondent filed no exceptions to the panel's report, we conclude that the panel's findings of fact are supported by clear and convincing evidence and that the facts es-

tablished support the panel's conclusions of law. We therefore adopt the panel's findings, conclusions, and modify their recommended discipline.

IT IS THEREFORE ORDERED that the respondent be suspended for a period of 1 year effective June 1, 2006, in accordance with Supreme Court Rule 203(a)(2) (2006 Kan. Ct. R. Annot. 243). His suspension is stayed and he is placed on 4-year supervised probation effective June 1, 2006. At the end of the 4 years, if the respondent has abided by all the conditions of his probation and satisfactorily completed probation, he shall file a motion and supporting affidavits requesting to be discharged from probation in accordance with Rule 211(g)(7).

IT IS FURTHER ORDERED that if the respondent fails to comply with the conditions of probation, probation may be revoked pursuant to Rule 211(g)(9) and disciplinary action taken in accordance with Rule 211(g)(10), (11), and (12).

IT IS FURTHER ORDERED that the costs of this proceeding be assessed against the respondent in an amount to be certified by the office of the Disciplinary Administrator and that this opinion be published in the official Kansas Reports.

ALLEGRUCCI, J., not participating.
LOCKETT, J., Retired, assigned.