IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 124,395

In the Matter of DANIEL J. MARTINEZ,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed April 1, 2022. Three-year suspension, stayed pending successful completion of three-year probation plan.

*Kathleen Selzler Lippert*, Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett*, Disciplinary Administrator, was with her on the formal complaint for the petitioner.

*John J. Ambrosio,* of Morris, Laing, Evans, Brock & Kennedy, Chtd., of Topeka, argued the cause for respondent, and *Daniel J. Martinez*, respondent, argued the cause pro se.

PER CURIAM:  This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Daniel J. Martinez, of Shawnee, an attorney admitted to the practice of law in Kansas in 2006. This matter involves the filing of a formal complaint, a hearing and findings of a hearing panel, and one subsequent proceeding before this court. The following summarizes the history of this case before the court:

On October 22, 2020, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). On November 5, 2020, the respondent filed an answer to the complaint. On December 28, 2020, the respondent filed an amended plan of probation.

1

On January 6, 2021, the hearing panel conducted the hearing on the formal complaint by Zoom, where the respondent appeared along with counsel. The hearing panel determined the respondent violated KRPC 1.1 (2022 Kan. S. Ct. R. at 327) (competence); KRPC 1.4 (2022 Kan. S. Ct. R. at 332) (communication); KRPC 1.5 (2022 Kan. S. Ct. R. at 333) (fees); KRPC 1.15 (2022 Kan. S. Ct. R. at 372) (safekeeping property); KRPC 1.16 (2022 Kan. S. Ct. R. at 378) (terminating representation); KRPC 7.1 (2022 Kan. S. Ct. R. at 424) (communications concerning a lawyer's services); and KRPC 8.4 (2022 Kan. S. Ct. R. at 434) (professional misconduct).

Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

"*Findings of Fact*

"14.    The hearing panel finds the following facts, by clear and convincing evidence:

"DA13280

"*Criminal Conduct*

"15.    In 2013, the Johnson County District Attorney charged the respondent with one count of misdemeanor domestic battery, a class B misdemeanor. The respondent's wife was the victim of the battery. The Johnson County District Attorney granted the respondent a diversion. The respondent successfully completed the criminal diversion program for the domestic battery. (It appears that the respondent's 2013 criminal case was not previously reported to the disciplinary administrator's office.)

"16.    On January 15, 2019, the respondent and his wife had an argument. Two days later, the respondent's wife contacted the police department and reported that the respondent pushed her causing a mark on her arm.

2

"17.     On February 8, 2019, the Johnson County District Attorney again charged the respondent with one count of misdemeanor domestic battery, a class B misdemeanor, in case number 19DV190. In the criminal proceeding, the respondent denied—and in the instant disciplinary proceeding, the respondent continues to deny—that he committed battery on his wife in 2019.

"18.     On July 15, 2019, the respondent entered a plea of guilty to an amended charge of disorderly conduct, a class C misdemeanor. The court sentenced the respondent to 30 days in jail. The court granted the respondent's request for probation.

"19.     The respondent completed a Batterer Intervention Evaluation. In the evaluation report, the evaluator concluded that the respondent was not appropriate for the Batterer Intervention Program. However, the evaluator concluded that the respondent appeared to minimize violence and noted value and respect, isolation and control, and physical abuse as areas of concern. The evaluator recommended individual counseling.

"20.     The respondent successfully completed probation. On February 13, 2020, the Court terminated the respondent's probation.

"*Failure to File Taxes*

"21.     The respondent failed to timely file his business and personal income tax returns for tax years 2012 through 2019. The respondent recently filed his business income tax returns. At the time of the hearing on the formal complaint, the respondent had not filed his personal income tax returns. Even though the respondent did not file the tax returns from tax years 2012 through 2019, he paid quarterly estimated taxes. As a result, the respondent does not owe any taxes for tax years 2012 through 2019, but he does owe approximately $16,000 in penalties.

"22.     On January 22, 2019, the respondent filed an action in divorce against his wife, Johnson County District Court case number 19CV363. On July 29, 2019, the court entered a decree of divorce and ordered the respondent to pay his former wife's attorney's fees in the amount of $2,000 within 30 days. The respondent failed to comply with the court order. On July 27, 2020, one year later, the respondent paid his former wife's attorney's fees.

"DA13408

"23.     In July 2017, the Johnson County District Attorney's office charged D.T. with possession with intent to distribute marijuana, possession of drug paraphernalia, and aggravated assault, all felonies. Based on D.T.'s criminal history and his usage of a firearm to commit the offenses, D.T. faced presumptive imprisonment in a range of 111 to 124 months.

"24.     D.T. contacted a number of attorneys trying to decide who to hire to represent him in the pending criminal case. When D.T. spoke with the respondent, the respondent indicated that he knew the prosecutor personally and would use that relationship to get D.T. probation. The respondent called the prosecutor and spoke with him during a meeting with D.T., establishing the respondent's friendly relationship with the prosecutor. Because of the respondent's assurances that he would get probation, D.T. retained the respondent.

"25.     D.T. agreed to pay the respondent a $10,000 flat fee for the representation through trial. The respondent agreed to accept $2,500 initially and then the remainder of the fees in installment payments. On July 14, 2017, D.T. paid the respondent $2,500; on August 4, 2017, D.T. paid the respondent an additional $2,500; on September 28, 2017, D.T. paid the respondent $2,000; and on October 31, 2017, D.T. paid the respondent a final $2,000. D.T. did not pay the remaining $1,000 under the fee agreement.

4

"26. The respondent's fee agreement included a statement that, 'All the money you pay is earned immediately, as we agreed.' The respondent deposited the first payment in his attorney trust account, but transferred it to his operating account two weeks later. The subsequent three payments were deposited directly into the respondent's operating account.

"27. The respondent did not keep time records to show how much time he spent representing D.T. In response to a later request from D.T.'s subsequent attorney, the respondent offered to review his records and calculate his time spent on the case.

"28. On July 17, 2017, the respondent entered his appearance on behalf of D.T. The respondent then continued the case multiple times over the next year. Throughout that time, despite the presumptive prison sentence, the respondent repeatedly told D.T. that the respondent believed D.T. would get probation.

"29. In February 2018, the prosecutor offered to settle the case by plea which would result in a presumptive prison sentence of 64 months. On the respondent's advice, D.T. turned the offer down.

"30. On June 6, 2018, the case was set for a pretrial conference. The respondent failed to appear in court. D.T. appeared and the case was continued to June 14, 2018, for a plea hearing.

"31. The prosecutor continued to make the same plea offer. On June 14, 2019, at the respondent's request, at the outset of the plea hearing, the prosecutor restated the plea offer. On the respondent's advice, D.T. again rejected the prosecutor's plea offer and entered an "open" plea as charged to the three felonies. The respondent reasoned that if D.T. entered an open plea, the Court would not learn that D.T.'s teenage son was present at the time the crimes were committed. The Court set sentencing for August 17, 2018.

"32. The day before sentencing, the respondent filed a motion for a downward departure. The respondent attached approximately 100 pages of mental health records to the motion. The records were in no discernible order and did not contain a summary letter

5

or a discharge report. The prosecutor agreed to only argue the facts asserted in the probable cause affidavit at sentencing. The affidavit did not include a statement that D.T.'s teenage son was present at the time the crimes were committed. However, the mental health records provided to the district court by the respondent included references that the child was present at the time D.T. committed the crimes.

"33.     During the hearing on the downward departure motion, the respondent did not call any witnesses from D.T.'s counseling service because the counselors were aware that D.T.'s son was present during the commission of the crimes. Also, the respondent failed to adequately prepare D.T. for the departure hearing or allocution.

"34.     The district court denied the motion for a downward departure and sentenced D.T. to 117 months in prison, noting that the presence of D.T.'s teenage son to be particularly concerning.

"35.     After sentencing, D.T. attempted to contact the respondent. The respondent did not communicate with D.T. after sentencing.

"36.     D.T. requested that the respondent refund the attorney fee. The respondent did not refund the attorney fee.

"37.     In July 2019, D.T. hired a new attorney. In October 2019, the court ordered that D.T.'s plea be withdrawn and the sentence vacated. Thereafter, the prosecutor made the same plea offer which was made in February and June 2018. D.T. accepted the plea offer and the district court subsequently sentenced D.T. to 64 months in prison.

"*Conclusions of Law*

"38.     Based upon the respondent's stipulations and the above findings of fact, the hearing panel concludes as a matter of law that the respondent violated KRPC 1.1 (competence), KRPC 1.4 (communication), KRPC 1.5 (fees), KRPC 1.15 (safekeeping property), KRPC 1.16 (terminating representation), KRPC 7.1 (communications

6

concerning a lawyer's services), and KRPC 8.4 (professional misconduct), as detailed below.

"39.     In addition, the disciplinary administrator alleged and the respondent stipulated that the respondent violated KRPC 1.2 (scope of representation), KRPC 1.3 (diligence), and Rule 207 (cooperation). The hearing panel concludes that the evidence presented is insufficient to conclude that the respondent violated KRPC 1.2, KRPC 1.3, or Rule 207. As such, the hearing panel dismisses the allegations that the respondent violated KRPC 1.2, KRPC 1.3, and Rule 207.

"40.     Further, in the formal complaint, the disciplinary administrator alleged that the respondent violated KRPC 1.6 (confidentiality). The respondent did not stipulate to violating KRPC 1.6 (confidentiality) and the disciplinary administrator did not present any evidence that the respondent violated KRPC 1.6. Accordingly, the hearing panel dismisses the allegation that the respondent violated KRPC 1.6.

"KRPC 1.1

"41.     Lawyers must provide competent representation to their clients. KRPC 1.1. 'Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.' *Id*. The respondent violated KRPC 1.1 in two ways. First, the respondent knew that based on D.T.'s criminal history and the crimes with which D.T. was charged, D.T. faced a presumptive prison sentence of up to 124 months. Despite that knowledge, the respondent advised D.T. to turn down the plea offer made by the prosecutor which included a presumptive prison sentence of 64 months and, instead, enter an "open" no contest plea to the three felonies, as originally charged. Thus, the respondent provided D.T. with incompetent representation based on the respondent's lack of legal knowledge. Second, the respondent provided D.T. with incompetent representation by failing to exercise necessary thoroughness and preparation when he failed to realize that the records he attached to the motion for downward departure included evidence that D.T.'s teenage son witnessed the crimes. Accordingly, the hearing panel concludes that the respondent violated KRPC 1.1 by providing D.T. with incompetent representation.

7

## "KRPC 1.4

"42.     KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' *Id.* Following sentencing, the respondent failed to communicate with D.T. Accordingly, the hearing panel concludes that the respondent violated KRPC 1.4(a).

"43.     'A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.' KRPC 1.4(b). The respondent failed to adequately communicate the likelihood that the Court would place D.T. on probation following D.T.'s 'open' plea to the crimes as charged. The hearing panel concludes that the respondent violated KRPC 1.4(b).

## "KRPC 1.5

"44.     A lawyer's fee must be reasonable. KRPC 1.5(a). In this case, the respondent charged a $10,000 attorney fee. In the fee agreement, the respondent stated that the fee was earned when received. It is *per se* unreasonable to charge a fee that is earned without completing the work. Accordingly, the hearing panel concludes that the respondent violated KRPC 1.5(a).

## "KRPC 1.15

"45.     Lawyers must properly safeguard their clients' property. KRPC 1.15(a) specifically provides that:

'(a)     A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state of Kansas. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and

8

shall be preserved for a period of five years after termination of the representation.'

In this case, the respondent failed to properly safeguard D.T.'s property. The respondent did not deposit three of the payments made by D.T. into the respondent's attorney trust account. Rather, the respondent deposited those payments into his operating account. Accordingly, the hearing panel concludes that the respondent failed to properly safeguard D.T.'s property by depositing unearned fees into his operating account, in violation of KRPC 1.15(a).

## "KRPC 1.16

"46.     KRPC 1.16 requires lawyers to take certain steps to protect clients after the representation has been terminated. Specifically, KRPC 1.16(d) provides the requirement in this regard:

'Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.' *Id.*

The respondent violated KRPC 1.16(d) by failing to protect D.T.'s interests. Specifically, the respondent failed to give D.T. reasonable notice that he was no longer representing him, he failed to respond to inquiries by D.T. following sentencing, and he failed to return any unearned fees or provide an accounting of earned fees. The hearing panel concludes that the respondent violated KRPC 1.16(d).

9

"47.     KRPC 7.1(a) provides:

'A lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services. A communication is false or misleading if it . . . contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading.'

The respondent violated KRPC 7.1(a) when he repeatedly assured D.T. that he would obtain probation for him. Based on the level of offenses and D.T.'s criminal history, the presumptive sentence was for prison. The respondent's repeated assurances that he would obtain probation for D.T. was materially false. As such, the hearing panel concludes that the respondent violated KRPC 7.1(a).

"KRPC 8.4

"48.     'It is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects.' KRPC 8.4(b). In this case, the respondent was charged with domestic violence on two separate occasions, one in 2013 and another in 2019. In 2013, the respondent participated in the diversion program and successfully completed the terms and conditions of the diversion agreement. In 2019, the respondent entered a plea to a lesser charge of disorderly conduct. The respondent's criminal conduct adversely reflects on his fitness as a lawyer in other respects. Accordingly, the hearing panel concludes that the respondent violated KRPC 8.4(b).

"49.     'It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice.' KRPC 8.4(d). The respondent engaged in conduct that was prejudicial to the administration of justice when he made no effort to timely pay opposing counsel's attorney's fees as ordered by the court in his divorce case. As such, the hearing panel concludes that the respondent violated KRPC 8.4(d).

10

"50.     'It is professional misconduct for a lawyer to . . . engage in any other conduct that adversely reflects on the lawyer's fitness to practice law.' KRPC 8.4(g). The respondent engaged in conduct that adversely reflects on his fitness to practice law when he failed to file personal and business tax returns for tax years 2012 through 2019. The hearing panel concludes that the respondent violated KRPC 8.4(g).

"*American Bar Association*
*Standards for Imposing Lawyer Sanctions*

"51.     In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"52.     *Duty Violated*. The respondent violated his duty to his client to provide competent and diligent representation. The respondent violated his duty to his client to provide adequate communication. The respondent also violated his duty to the public to maintain his personal integrity.

"53.     *Mental State*. The respondent knowingly violated his duties.

"54.     *Injury*. As a result of the respondent's misconduct, the respondent caused actual serious injury to D.T. and caused actual injury to the legal profession and the legal system.

"Aggravating and Mitigating Factors

"55.     Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its

11

recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present:

"a. *Prior Disciplinary Offenses*. On June 5, 2018, the respondent entered into an attorney diversion agreement for a violation of KRPC 3.1, for pursuing a claim in a case he knew was not meritorious. The respondent successfully completed the terms and conditions of diversion and the disciplinary case was dismissed. Under Rule 212(h)(2), the respondent's completion of the attorney diversion agreement is to be considered as an aggravating factor of prior discipline.

"b. *Dishonest or Selfish Motive*. The respondent assured D.T. that he would get probation for him in a presumptive imprisonment case. It appears that the reason the respondent made the initial assurance was to persuade D.T. to hire the respondent for the representation. Accordingly, the hearing panel concludes that the respondent's misconduct was motivated by selfishness.

"c. *Multiple Offenses*. The respondent committed multiple rule violations. The respondent violated KRPC 1.1 (competence), KRPC 1.4 (communication), KRPC 1.5 (fees), KRPC 1.15 (safekeeping property), KRPC 1.16 (terminating representation), KRPC 7.1 (communications concerning a lawyer's services), and KRPC 8.4 (professional misconduct). Accordingly, the hearing panel concludes that the respondent committed multiple offenses.

"d. *Substantial Experience in the Practice of Law*. The Kansas Supreme Court admitted the respondent to the practice of law in the State of Kansas in 2006. At the time of most of the misconduct, the respondent had been practicing law for more than 10 years.

"e. *Illegal Conduct, Including that Involving the Use of Controlled Substances*. The respondent engaged in two incidents of criminal conduct—in 2013 and in 2019. The hearing panel concludes that the respondent's criminal conduct further aggravates this case.

"56. Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

12

"a.    *Personal or Emotional Problems if Such Misfortunes Have Contributed to Violation of the Kansas Rules of Professional Conduct.* During the relevant time period, the respondent's personal life was in turmoil which culminated in his divorce. According to an evaluation report from Paramount Recovery, the respondent may suffer from Cyclothymic Disorder. It is clear that the respondent's personal or emotional problems contributed to his misconduct.

"b.    *Timely Good Faith Effort to Make Restitution or to Rectify Consequences of Misconduct.* While the respondent had not returned the fee paid, at the time of the hearing on the formal complaint, the respondent had placed the $9,000 in trust to refund the fee.

"c.    *The Present and Past Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His or Her Full and Free Acknowledgment of the Transgressions.* The respondent fully cooperated with the disciplinary process and acknowledged his transgressions by admitting certain facts and rule violations.

"d.    *Previous Good Character and Reputation in the Community Including Any Letters from Clients, Friends and Lawyers in Support of the Character and General Reputation of the Attorney.* The respondent is an active and productive member of the bar of Johnson County, Kansas. The respondent also enjoys the respect of his peers and generally possesses a good character and reputation as evidenced by several letters received by the hearing panel.

"57.    In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

"4.42    'Suspension is generally appropriate when:
    '(a)    a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or
    '(b)    a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.'

13

"4.43    'Reprimand is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client.'

"4.51    'Disbarment is generally appropriate when a lawyer's course of conduct demonstrates that the lawyer does not understand the most fundamental legal doctrines or procedures, and the lawyer's conduct causes injury or potential injury to a client.'

"4.52    'Suspension is generally appropriate when a lawyer engages in an area of practice in which the lawyer knows he or she is not competent, and causes injury or potential injury to a client.'

"4.53    'Reprimand is generally appropriate when a lawyer:
'(a)    demonstrates failure to understand relevant legal doctrines or procedures and causes injury or potential injury to a client; or
'(b)    is negligent in determining whether he or she is competent to handle a legal matter and causes injury or potential injury to a client.'

"4.62    'Suspension is generally appropriate when a lawyer knowingly deceives a client, and causes injury or potential injury to the client.'

"4.63    'Reprimand is generally appropriate when a lawyer negligently fails to provide a client with accurate or complete information, and causes injury or potential injury to the client.'

"5.12    'Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice.'

"6.22 'Suspension is appropriate when a lawyer knowingly violates a court order or rule, and there is injury or potential injury to a client or a party, or interference or potential interference with a legal proceeding.'

"*Recommendation of the Parties*

"58. The deputy disciplinary administrator recommended that the respondent be suspended for a period of two years. The deputy disciplinary administrator further recommended that following the two-year suspension and upon reinstatement, the respondent be placed on probation according to the respondent's amended plan of probation.

"59. The respondent recommended that he be indefinitely suspended from the practice of law, but that the imposition of the indefinite suspension be suspended and the respondent be immediately placed on probation under his amended plan of probation filed December 28, 2020.

"*Consideration of Probation*

"60. When a respondent requests probation, the hearing panel is required to consider Kan. Sup. Ct. R. 227(d), which provides:

'(d)     Restrictions on Recommendation of Probation. A hearing panel may not recommend that the respondent be placed on probation unless the following requirements are met:
(1)     the respondent complies with subsections (a) and (c) and the proposed probation plan satisfies the requirements in subsection (b);
(2)     the misconduct can be corrected by probation; and
(3)     placing the respondent on probation is in the best interests of the legal profession and the public.'

15

"61.    The respondent developed a workable, substantial, and detailed plan of probation. The respondent provided a copy of the proposed plan of probation to the disciplinary administrator and each member of the hearing panel at least 14 days prior to the hearing on the formal complaint. The respondent put the proposed plan of probation into effect prior to the hearing on the formal complaint by complying with each of the terms and conditions of the probation plan. The misconduct, in this case, can be corrected by probation. Placing the respondent on probation is in the best interests of the legal profession and the citizens of the State of Kansas. Thus, it is appropriate to consider probation in this case.

"*Recommendation of the Hearing Panel*

"62.    Based upon the respondent's stipulations, the findings of fact, the conclusions of law, and the Standards, the hearing panel unanimously recommends that the respondent's license to practice law be suspended for a period of three years. The hearing panel also recommends that the imposition of suspension be suspended and the respondent be placed on probation for a period of three years, subject to the terms and conditions included in the respondent's amended plan of probation, filed December 28, 2020.

"63.    In addition, the hearing panel recommends that the following two additional terms be added to the respondent's probation plan:

"a.    The respondent return the $9,000 attorney fee and provide evidence of the same to the disciplinary administrator's office.
"b.    The respondent comply with all recommendations contained in the evaluation report from Paramount Recovery.

"64.    Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator."

16

In a disciplinary proceeding, this court considers the evidence, the findings of the hearing panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 226(a)(1)(A) (2022 Kan. S. Ct. R. at 281). "Clear and convincing evidence is 'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable."'" *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

The respondent was given adequate notice of the formal complaint to which he filed an answer. The respondent was also given adequate notice of the hearing before the panel and the hearing before this court. The respondent developed a detailed probation plan that was provided to the Disciplinary Administrator and each member of the hearing panel prior to the hearing on the formal complaint. He did not file exceptions to the hearing panel's final hearing report.

With no exceptions before us, the panel's factual findings are deemed admitted. Supreme Court Rule 228(g)(1), (2) (2022 Kan. S. Ct. R. at 287). Furthermore, the facts before the hearing panel establish by clear and convincing evidence the charged misconduct in violation of KRPC 1.1 (competence); KRPC 1.4 (communication); KRPC 1.5 (fees); KRPC 1.15 (safekeeping property); KRPC 1.16 (terminating representation); KRPC 7.1 (communications concerning a lawyer's services); and KRPC 8.4 (professional misconduct). The evidence also supports the panel's conclusions of law. We, therefore, adopt the panel's findings and conclusions.

The only issue left to be determined is any discipline. This court is not bound by the recommendations made by the Disciplinary Administrator or the hearing panel. See *In re Biscanin*, 305 Kan. 1212, 1229, 390 P.3d 886 (2017).

During oral arguments, counsel for the office of the Disciplinary Administrator proposed following the hearing panel's recommendation for discipline and the respondent does not disagree. We agree with the joint recommendation of the hearing panel and the Disciplinary Administrator. The respondent's license to practice law is suspended for a period of three years. Imposition of said suspension is stayed and the respondent is placed on probation for a period of three years, subject to the terms and conditions included in the respondent's amended plan of probation, filed December 28, 2020. We note, however, that a minority of the court would impose some term of suspension that is not stayed.

In addition to the terms and conditions of the respondent's amended plan of probation, which is hereby approved, the respondent shall also return the $9,000 attorney fee to D.T. and comply with all recommendations contained in the evaluation report from Paramount Recovery.

Costs are assessed against the respondent in an amount to be certified by the office of the Disciplinary Administrator.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Daniel J. Martinez be suspended from the practice of law for a period of three years for violations of KRPC 1.1 (2022 Kan. S. Ct. R. at 327) (competence); KRPC 1.4 (2022 Kan. S. Ct. R. at 332) (communication); KRPC 1.5 (2022 Kan. S. Ct. R. at 333) (fees); KRPC 1.15 (2022 Kan. S. Ct. R. at 372) (safekeeping property); KRPC 1.16 (2022 Kan. S. Ct. R. at 378) (terminating representation); KRPC

18

7.1 (2022 Kan. S. Ct. R. at 424) (communications concerning a lawyer's services); and KRPC 8.4 (2022 Kan. S. Ct. R. at 434) (professional misconduct). However, imposition of said suspension is stayed and the respondent is placed on probation for a period of three years, subject to the terms and conditions set forth above, in accordance with Supreme Court Rule 225(a)(4) (2022 Kan. S. Ct. R. at 281).

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.