IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 126,643

In the Matter of PHILIP R. SEDGWICK,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Oral argument held November 2, 2023. Opinion filed December 29, 2023. Six-month suspension, stayed pending successful completion of a three-year period of probation.

*Julia A. Hart*, Deputy Disciplinary Administrator, argued the cause and was on the formal complaint for the petitioner.

*John J. Ambrosio*, of Morris Laing Law Firm of Topeka, argued the cause, and *Philip R. Sedgwick*, respondent, argued the cause pro se.

PER CURIAM: This is an attorney-discipline proceeding against the respondent, Philip R. Sedgwick, of Kansas City, Kansas. Sedgwick received his license to practice law in Kansas in April 1983.

On February 7, 2023, the Disciplinary Administrator's office filed a formal complaint against Sedgwick alleging violations of the Kansas Rules of Professional Conduct (KRPC). Sedgwick answered the formal complaint on February 24, 2023.

On June 8, 2023, Sedgwick appeared at the complaint hearing before a panel of the Kansas Board for Discipline of Attorneys. After the hearing, the panel determined that Sedgwick had violated KRPC 1.1 (competence) (2023 Kan. S. Ct. R. at 327), KRPC 1.3 (diligence) (2023 Kan. S. Ct. R. at 331), and KRPC 1.4 (communication) (2023 Kan.

S. Ct. R. at 332). The panel set forth its factual findings, legal conclusions, and recommended discipline in a final hearing report. The relevant portions of that report are set forth below.

FACTUAL AND PROCEDURAL BACKGROUND

"*Findings of Fact*

"18.   The hearing panel finds the following facts, by clear and convincing evidence:

"DA13,686

"19.   On October 17, 2019, T.W. hired the respondent to represent him in an ongoing domestic case in which C.C. was the opposing party.

"20.   Prior to T.W. hiring the respondent, the court had issued an order establishing paternity and ordering T.W. to pay child support. The court also approved a parenting plan establishing visitation.

"21.   During a hearing on August 22, 2018, the court ordered supervised visitation between T.W. and the minor child at a court-approved visitation facility. The court further ordered T.W. to engage in family therapy with the minor child.

"22.   Later, in August 2019, the court suspended T.W.'s supervised visitation with the minor child because therapy between T.[W]. and the child had ceased after the therapist discharged T.W. as a client.

"23.   The therapist filed a report, dated July 9, 2019, with the court regarding her decision to discharge T.W. This report was filed under seal and listed in the court's 'record of actions' in an entry dated August 26, 2019.

"24.   Around this same time, the court also held a hearing on T.W.'s pro se motion seeking an order to require C.C. to sign off on their minor child's passport. The court granted this motion.

"25.   On May 28, 2019, the court filed an order to appear and show cause against C.C. due to her refusal to sign off on the minor child's passport as ordered.

"26.   On October 17, 2019, when T.W. hired the respondent to represent him in the domestic case, T.W. also hired the respondent to represent him in a misdemeanor domestic battery charge pending in Kansas City Municipal Court. C.C. was the alleged victim in this case.

"27.   On December 16, 2019, the respondent entered his appearance as T.W.'s attorney in the domestic case and filed an amended proposed parenting plan and domestic relations affidavit to supplement T.W.'s previously filed pro se motion.

"28.   The proposed plan contained typographical errors, including paragraph #4, which left the time for weekend visitation blank.

"29.   The proposed parenting plan also contained what the court perceived as inappropriate language in the heading for paragraph #8:  'Dog in the Manger Rule.'

"30.   The court scheduled a hearing in the child custody case for December 19, 2019. At the hearing, opposing counsel, C.C., and the respondent were present for the hearing; the respondent's client T.W. failed to appear timely. Accordingly, the court granted default judgment and dismissed the pending motion.

"31.   On December 27, 2019, the respondent filed a motion to set aside the default judgement.

"32.   The court granted the motion to set aside and scheduled the matter for rehearing. The hearing was continued by agreement several times. Some continuances

were due to the emerging COVID-19 pandemic. Yet, others were due to the respondent's inability to obtain service on C.C. due to his typographical errors in the certificates of service.

"33.   On November 13, 2020, the respondent filed an amended motion to modify custody and child support. In support of this motion, the respondent stated:  1) T.W. has no income and is applying for disability, and 2) T.W. seeks to have contact with the minor child.

"34.   The court set the matter for hearing on March 16, 2021. The court blocked off the entire afternoon for the parties to present evidence and argument. Due to the ongoing pandemic, this hearing was to occur via Zoom.

"35.   The respondent sent out notice of the March 16, 2021, hearing. However, the Zoom meeting identification number in the notice was incorrect. The court caught this clerical error, provided the parties with the correct identification number, and the matter proceeded.

"36.   At this hearing, the respondent called his client as a witness. The respondent asked T.W. if he had completed the court-ordered therapy with the minor child. T.W. testified that he had completed this therapy.

"37.   On cross-examination, T.W. admitted he did not successfully complete court-ordered therapy, as he had not attended any sessions since August 2019.

"38.   The respondent also asked T.W. how he and C.C. got along. T.W.'s testimony indicated they got along 'fine.'

"39.   On cross-examination, T.W. admitted the municipal court had convicted him of the domestic misdemeanor battery charge against C.C.

"40.   At this hearing, T.W. also asserted he had applied for and was placed on disability.

"41.   In response to the court's questioning, T.W. admitted his application for disability had been denied, but he had appealed the decision.

"42.   On March 17, 2021, the court issued a written order denying T.W.'s motion to modify custody and child support and specifically found that T.W.'s testimony that he successfully completed court-ordered therapy was 'untrue.'

"43.   During the disciplinary investigation, the respondent acknowledged inappropriately using the 'Dog in the Manger Rule' phrase in the amended parenting plan, making typographical errors in filings, not spending the appropriate time preparing T.W. for his March 16, 2021, testimony, and that he had not reviewed the therapist's reports or spoken with the therapist before the hearing.

"DA13,702

"44.   On June 5, 2019, the respondent appeared with and on behalf of the complainant, T.B., in the Wyandotte County District Court on allegations that T.B. violated his court-ordered probation. T.B. waived his right to an evidentiary hearing and stipulated to the alleged probation violations. The court then proceeded to disposition, revoked T.B.'s probation, and imposed his underlying prison sentence of 161 months in the custody of the Kansas Department of Corrections.

"45.   On June 18, 2019, the respondent properly and timely filed a notice of appeal with the sentencing court and requested that the court appoint an appellate defender for T.B.

"46.   On July 30, 2019, T.B. filed a complaint with the disciplinary administrator's office, alleging that the respondent entrapped T.B. and failed to present a defense. As a result, T.B. alleges the court sentenced him to more than ten years of additional incarceration.

"47.   On September 19, 2019, T.B. sent another letter to the disciplinary administrator's office stating the local court had still not appointed the appellate defender's office to represent him in his June 2019 probation revocation appeal.

"48.   The disciplinary administrator's office sent timely responses to T.B. regarding these complaints, stating that they would not be docketed for investigation, as they did not appear to implicate the rules of professional conduct.

"49.   Approximately one year later, on October 10, 2020, and October 26, 2020, T.B. sent letters to the disciplinary administrator's office. In addition to reiterating the prior allegations, T.B. noted that the local court had not yet appointed the appellate defender's office to appeal his probation revocation. On March 25, 2021, T.B. submitted a written complaint regarding the failure to appoint appellate counsel.

"50.   On April 7, 2021, the disciplinary administrator's office asked the respondent to provide any information he had regarding why there was no court-appointed counsel representing T.B. in his appeal.

"51.   On April 16, 2021, the respondent replied by letter noting his usual practice when a client requests to appeal a sentence. The respondent also stated that he would inquire of the court what happened with the appointment of counsel for T.B.'s appeal.

"52.   On April 30, 2021, the respondent told the disciplinary administrator's office that after he contacted the judge's aide on April 20, 2021, the court appointed the appellate defender's office to represent T.B.

"53.   During the subsequent disciplinary investigation, the respondent acknowledged that he should have followed up with the court earlier to ensure the appellate defender's office was appointed.

"54.   The parties stipulate that the respondent's conduct violated KRPC 1.1 (competence), 1.3 (diligence), and 1.4 (communication) in the DA13,686 matter and KRPC 1.3 (diligence) in the DA13,702 matter.

"55.   During the formal hearing, the respondent testified that he believes changing the nature of his law practice to less complex matters and reducing the number

of cases he accepts at any one time, along with following the terms of his proposed probation plan will help ensure he complies with the Kansas Rules of Professional Conduct in the future.

"56.  Craig Lubow, the respondent's proposed probation supervisor, is an attorney who practices separately from the respondent, but in the same office building. Mr. Lubow testified during the formal hearing that he has been meeting regularly with the respondent to go over the respondent's case files. Mr. Lubow said that the respondent is very open to suggestions and reaches out to Mr. Lubow with any concerns about a case.

"57.  However, Mr. Lubow is concerned that the respondent does not keep his case files organized well and has a lot of papers on his desk that do not always make it to their assigned files. He also felt that the respondent should reduce his caseload further than its current level. Mr. Lubow said that the respondent needs to be more organized so that matters don't fall through the cracks, but otherwise felt that the respondent was doing reasonably well complying with the probation plan.

"58.  Mr. Lubow testified that he is willing to work with the respondent on his organization, help him continue to reduce his case load, and supervise the respondent for the proposed three-year term of probation.

"*Conclusions of Law*

"59.  Based upon the findings of fact, the hearing panel concludes as a matter of law that the respondent violated KRPC 1.1 (competence), 1.3 (diligence), and 1.4 (communication), as detailed below.

"KRPC 1.1

"60.  Lawyers must provide competent representation to their clients. KRPC 1.1. 'Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.' *Id*.

"61.   The respondent was not competent to represent T.W. in the domestic matter due to the respondent's failure to review therapist reports or speak with the therapist, use of an inappropriate phrase in a parenting plan, failure to correct typographical errors to ensure proper service on the opposing party, and failure to properly prepare T.W. for his testimony during the March 26, 2021, hearing. This conduct reflects inadequate skill, thoroughness, and preparation to represent T.W. in the domestic case.

"62.   Further, the respondent stipulated that his conduct in DA13,686 violated KRPC 1.1.

"63.   Accordingly, the hearing panel concludes that the respondent violated KRPC 1.1.

"KRPC 1.3

"64.   'A lawyer shall act with reasonable diligence and promptness in representing a client.' KRPC 1.3.

"65.   The respondent failed to diligently represent T.W. in the DA13,686 matter when he failed to obtain proper service of the notice of hearing on C.C. Further, the respondent failed to act with reasonable diligence when he failed to properly investigate the situation involving T.W.'s former family therapist and failed to adequately prepare T.W. for his testimony prior to the March 26, 2021, hearing.

"66.   In addition, the respondent failed to act diligently in his client T.B.'s case in not confirming that the court [had] appointed appellate counsel to represent T.B. in a timely manner.

"67.   The respondent stipulated that his conduct in DA13,686 and DA13,702 violated KRPC 1.3.

"68. Because the respondent failed to act with reasonable diligence and promptness in representing T.W. and T.B., the hearing panel concludes that the respondent violated KRPC 1.3.

"KRPC 1.4

"69. KRPC 1.4(b) provides that '[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.'

"70. In the DA13,686 matter, the respondent violated KRPC 1.4(b) when he failed to explain the potential legal consequences of the misdemeanor battery case and other circumstances in the domestic matter to T.W. prior to T.W.'s testimony during the March 26, 2021, hearing.

"71. Further, the respondent stipulated that his conduct in DA13,686 violated KRPC 1.4.

"72. Accordingly, the hearing panel concludes that the respondent violated KRPC 1.4(b).

"*American Bar Association*
*Standards for Imposing Lawyer Sanctions*

"73. In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"74. *Duty Violated*. The respondent violated his duty to his clients T.W. and T.B.

"75. *Mental State*. The respondent negligently violated his duty. The hearing panel concludes that the respondent engaged in a pattern of neglect.

"76. *Injury*. As a result of the respondent's misconduct, the respondent caused injury to T.W. in negatively impacting T.W.'s opportunity to present the best case he could to gain the court's approval of his motion during the March 26, 2021, hearing. As a result of the respondent's misconduct, the respondent caused potential injury to T.B.'s appeal and actual injury to T.B. by creating unnecessary stress and T.B.'s worsened disillusionment with the legal process.

"Aggravating and Mitigating Factors

"77. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present:

"78. *Prior Disciplinary Offenses*. The respondent has been previously disciplined on three occasions for rules violations similar to those involved here. In 2002, the respondent was disciplined by informal admonition for violation of KRPC 1.3 and 1.4. In 2007, the respondent was placed on diversion for violation of KRPC 1.3. In 2018, the respondent was placed on diversion for violation of KRPC 1.1, 1.4, 3.1, 8.1, and 8.4(a). The respondent successfully completed and was discharged from both diversions.

"79. *A Pattern of Misconduct*. The respondent has engaged in a pattern of misconduct, particularly involving violation of KRPC 1.1, 1.3, and 1.4. The respondent has violated each of these rules more than once between this and prior disciplinary cases and violated KRPC 1.3 in both docketed matters at issue here.

"80. *Multiple Offenses*. The respondent committed multiple rule violations. The respondent violated KRPC 1.1, KRPC 1.3, and KRPC 1.4. This matter involves misconduct in two separate client representations. Accordingly, the hearing panel concludes that the respondent committed multiple offenses.

"81. *Vulnerability of Victim*. T.W. and T.B. were both particularly vulnerable to the respondent's misconduct. T.W.'s ability to have contact with his child was at stake and

lost in the domestic case. T.B. was in prison and unable to take independent action to employ appellate counsel or ensure counsel was appointed as he would have been if not incarcerated. The hearing panel concludes that the victims of the respondent's misconduct were vulnerable.

"82. *Substantial Experience in the Practice of Law*. The Kansas Supreme Court admitted the respondent to practice law in the State of Kansas in 1983. At the time of the misconduct, the respondent has been practicing law for more than 36 years.

"83. *Misconduct Occurred During Prior Diversion Period*. The hearing panel notes that the respondent's 2018 diversion was for a term of 24 months, from August 2018 to August 2020. At least some of the misconduct in the two docketed matters here occurred during the term of this diversion. The hearing panel considered this as an aggravating factor.

"84. Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

"85. *Absence of a Prior Disciplinary Record*. While the respondent received prior discipline, this is the first hearing on a formal complaint involving the respondent in more than 36 years of practice. The hearing panel took this into account in mitigation when considering prior discipline as an aggravating factor.

"86. *The Present and Past Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His or Her Full and Free Acknowledgment of the Transgressions*. The respondent fully cooperated with the disciplinary process. The respondent and his counsel worked with the disciplinary administrator's office and ultimately entered into a joint stipulation regarding the underlying facts and stipulated to rules violations.

"87. *Previous Good Character and Reputation in the Community Including Any Letters from Clients, Friends and Lawyers in Support of the Character and General*

*Reputation of the Attorney*. The respondent is an active and productive member of the bar in Wyandotte County, Kansas. The respondent also enjoys the respect of his peers and generally possesses a good character and reputation as evidenced by several letters received by the hearing panel.

"88.   *Remorse*. At the hearing on this matter, the respondent expressed genuine remorse for having engaged in the misconduct.

"89.   In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

'4.42   Suspension is generally appropriate when:

(a)   a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or

(b)   a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.'

'4.52   Suspension is generally appropriate when a lawyer engages in an area of practice in which the lawyer knows he or she is not competent, and causes injury or potential injury to a client.'

'4.53   Reprimand is generally appropriate when a lawyer:

(a)   demonstrates failure to understand relevant legal doctrines or procedures and causes injury or potential injury to a client; or

(b)   is negligent in determining whether he or she is competent to handle a legal matter and causes injury or potential injury to a client.'

'8.2   Suspension is generally appropriate when a lawyer has been reprimanded for the same or similar misconduct and engages in further acts of

misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession.'

'8.3   Reprimand is generally appropriate when a lawyer:

  (a)   negligently violates the terms of a prior disciplinary order and such violation causes injury or potential injury to a client, the public, the legal system, or the profession; or

  (b)   has received an admonition for the same or similar misconduct and engages in further acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession.'

"*Recommendation of the Parties*

"90.   The disciplinary administrator recommended that the respondent's license to practice law be suspended for a period of three years and that the respondent be required to undergo a reinstatement hearing pursuant to Rule 232 (2023 Kan. S. Ct. R. at 293), with the suspension being stayed while the respondent serves three years' probation according to the terms of the respondent's proposed probation plan in respondent's exhibit F1.

"91.   The respondent recommended the same discipline as that recommended by the disciplinary administrator.

"*Discussion*

"92.   When a respondent requests probation, the hearing panel is required to consider Rule 227, which provides:

  '(d)   Restrictions on Recommendation of Probation. A hearing panel may not recommend that the respondent be placed on probation unless the following requirements are met:

    (1)   the respondent complies with subsections (a) and (c) and the proposed probation plan satisfies the requirements in subsection (b);

    (2)   the misconduct can be corrected by probation; and

    (3)   placing the respondent on probation is in the best interests of the legal profession and the public.'

"93.   The hearing panel concludes based on the evidence that the requirements of Rule 227 are met here. The hearing panel heard testimony of Mr. Lubow that when the respondent is supervised by Mr. Lubow, the respondent is able to maintain the necessary attention, thoroughness, and preparation necessary to properly represent his clients. Mr. Lubow believed that the respondent is competent in the areas of law he practices in and with the proper limitation of his caseload and supervision, the respondent can appropriately represent his clients. The respondent accepts cases from a portion of the population that may not otherwise be able to obtain legal representation, and the hearing panel believes that the respondent can serve these clients appropriately if he follows the terms of the proposed probation plan.

"94.   The respondent's probation plan is workable, substantial, and detailed, contains adequate safeguards to address the respondent's misconduct, protect the public, and ensure the respondent's compliance with the rules going forward, names Mr. Lubow, who seems capable of handling the assignment, as practice supervisor, and includes a provision that the respondent will not commit misconduct.

"95.   Further, the respondent complied with subsections (a) and (b) of Rule 227.

"96.   Accordingly, the hearing panel concludes that with the proper supports through the respondent's probation plan and limiting the amount and types of cases he handles, the respondent's misconduct can be corrected by probation and placing the respondent on probation is in the best interest of the legal profession and the public.

"97.   While the hearing panel concludes that the probation plan is adequate to meet the requirements of Rule 227, the hearing panel further recommends that paragraph

20 of the proposed probation plan be amended to permit the respondent to accept or handle no cases other than municipal criminal matters, misdemeanor criminal matters, or severity level 7-9 felonies. Based on the evidence, limiting the respondent to only handling these types of cases will ensure the lowest possibility of error or violation of the Kansas Rules of Professional Conduct.

"98. The hearing panel further recommends that the respondent be required to undergo a KALAP law practice audit within 6 months of the Court's decision in this matter and follow all recommendations from KALAP. The hearing panel believes that the respondent could benefit from the assistance of a qualified law practice management monitor who could help the respondent develop systems he can use to become better organized and ensure his compliance with the Kansas Rules of Professional Conduct.

"99. Mr. Lubow testified that he is not familiar with the KALAP program. Therefore, the hearing panel recommends that, while Mr. Lubow should serve as the respondent's probation supervisor, another lawyer should be appointed to assist the respondent with any law practice management assistance recommended by KALAP.

"*Recommendation of the Hearing Panel*

"100. Accordingly, based upon the findings of fact, conclusions of law, and the Standards listed above, the hearing panel unanimously recommends that the respondent's license to practice law be suspended for a period of three years with the requirement that the respondent undergo a reinstatement hearing pursuant to Rule 232 (2023 Kan. S. Ct. R. at 293). The hearing panel further recommends that the suspension be stayed while the respondent serves three years' probation according to the terms of the respondent's proposed probation plan in respondent's exhibit F1, as amended pursuant to the panel's recommendations in sections 97 and 98.

"101. Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator."

After the hearing panel issued its report, we ordered oral arguments in this matter under Rule 232(g)(4)(D) (2023 Kan. S. Ct. R. at 296). And we heard oral argument on November 2, 2023.

DISCUSSION

In a disciplinary proceeding, this court generally considers the evidence, the disciplinary panel's findings, and the parties' arguments to determine whether KRPC violations exist and, if they do, the appropriate discipline to impose. Attorney misconduct must be established by clear and convincing evidence. *In re Spiegel*, 315 Kan. 143, 147, 504 P.3d 1057 (2022); see Supreme Court Rule 226(a)(1)(A) (2023 Kan. S. Ct. R. at 281). Clear and convincing evidence is evidence that causes the fact-finder to believe that the truth of the facts asserted is highly probable. *In re Murphy*, 312 Kan. 203, 218, 473 P.3d 886 (2020).

The respondent filed no exceptions to the panel's final hearing report. Thus, the hearing panel's final report is deemed admitted. Supreme Court Rule 228(g)(1) (2023 Kan. S. Ct. R. at 288). After a review of the entire record, we conclude the panel's findings of fact are supported by clear and convincing evidence and support the panel's conclusions of law. We therefore adopt those findings and conclusions.

As to the discipline to be imposed, both the Disciplinary Administrator and the hearing panel recommended a three-year suspension, with a stay of the suspension while the respondent serves three years' probation. But these recommendations are advisory only and do not prevent this court from imposing different discipline. *In re Biscanin*, 305 Kan. 1212, 1229, 390 P.3d 886 (2017).

To aid in determining appropriate discipline, this court generally considers the American Bar Association (ABA) Standards for Imposing Lawyer Sanctions. *In re Hodge*, 307 Kan. 170, 230-31, 407 P.3d 613 (2017). Under those Standards, a suspension is generally an appropriate sanction for a lack of diligence when "a lawyer engages in a pattern of neglect and causes injury or potential injury to a client." ABA Standard 4.42(b). Suspension is also "generally appropriate when a lawyer has been reprimanded for the same or similar misconduct and engages in further similar acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession." ABA Standard 8.2.

Here, the respondent negligently violated his duties to T.W. and T.B. resulting in violations of KRPC 1.1, 1.3, and 1.4(b). The respondent showed a lack of diligence in his representation of both T.W. and T.B., demonstrating a pattern of neglect. And the respondent has previously been disciplined for violations of KRPC 1.1, 1.3, and 1.4. Thus, we agree that suspension is an appropriate sanction under the relevant ABA Standards.

But we disagree that a three-year suspension is appropriate in this case. We have previously imposed suspensions of this length in cases involving knowing misconduct. See, e.g., *In re Martinez*, 315 Kan. 245, 257, 506 P.3d 909 (2022) (imposing three-year suspension on attorney for knowingly violating KRPC 1.1, 1.4, 1.5, 1.15, 1.16, 7.1, and 8.4); *In re Rumsey*, 301 Kan. 438, 450, 343 P.3d 93 (2015) (imposing three-year suspension on attorney for knowingly violating KRPC 3.5, 8.1, and 8.4); *In re Cline*, 289 Kan. 834, 849, 217 P.3d 455 (2009) (imposing three-year suspension on attorney for knowingly violating KRPC 1.1, 1.2, 1.3, 1.4, 1.8, 1.16, 5.3, 8.3, and 8.4). But in cases of negligent conduct, we have imposed lesser sanctions. See, e.g., *In re Works*, 307 Kan. 26, 36-37, 404 P.3d 681 (2017) (imposing two-year suspension on attorney for negligently violating KRPC 1.2, 1.3, 1.4, 1.16, and 3.2); *In re Freed*, 294 Kan. 655, 663, 279 P.3d 118 (2012) (imposing six-month suspension on attorney for negligently violating KRPC

1.1, 1.3, 1.4, and 1.15); see also *In re Boaten*, 276 Kan. 656, 663, 78 P.3d 458 (2003) (imposing sanction of published censure on attorney for negligently violating KRPC 1.3 and 1.4).

Here, respondent's misconduct was neither intentional nor knowing. Thus, we hold that a suspension of six months is appropriate discipline in this case. However, that suspension shall be stayed pending respondent's successful participation in and completion of a three-year probation period. During this probation period, respondent shall comply with the terms and conditions of his amended proposed probation plan. Respondent shall also be subject to two additional conditions during this probation period. First, the respondent shall neither accept nor handle any criminal cases other than municipal criminal matters, misdemeanor criminal matters, or severity level 7-9 felonies. Second, the respondent shall be required to undergo a Kansas Lawyers Assistance Program (KALAP) law practice audit within six months of the court's decision in this matter and follow all recommendations from KALAP.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Philip R. Sedgwick is suspended for six months from the practice of law, effective the date of this opinion, in accordance with Supreme Court Rule 225(a)(3) (2023 Kan. S. Ct. R. at 281) for violating KRPC 1.1, 1.3, and 1.4. However, respondent's suspension is stayed pending successful completion of three years of probation under the terms and conditions set forth above, including the terms of the amended proposed probation plan which are incorporated by reference.

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to respondent and that this opinion be published in the official Kansas Reports.